UNITED STATES DISTRICT COURT
DISTRICT OF WESTERN DISTRICT OF WISCONSIN
MADISON DIVISION

| | |
|---|---|
| **WISCONSIN RIGHT TO LIFE POLITICAL ACTION COMMITTEE,** <br>  *Plaintiff*, <br><br> v. <br><br> **MICHAEL BRENNAN**, in his official capacity as a member of the Government Accountability Board, **WILLIAM EICH**, in his official capacity as a member of the Government Accountability Board, **GERALD NICHOL**, in his official capacity as a member of the Government Accountability Board, **THOMAS CANE**, in his official capacity as a member of the Government Accountability Board, **THOMAS BARLAND**, in his official capacity as a member of the Government Accountability Board, **GORDON MYSE**, in his official capacity as a member of the Government Accountability Board, **DAWN MARIE SASS**, in her official capacity as Wisconsin State Treasurer, and **JOHN T. CHISHOLM**, in his official capacity as Milwaukee County District Attorney, <br><br> *Defendants*. | Civil Action No. _____ <br><br><br> **VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiff Wisconsin Right to Life Political Action Committee ("WRTL"), for its Complaint against the Defendants, states the following:

### Introduction

1. This is a civil action for declaratory and injunctive relief arising under the Constitution of the United States. WRTL claims that Wisconsin Statute § 11.513, which regulates elections and election campaigns in the State of Wisconsin, violates the First and Fourteenth Amendments to the

United States Constitution by unduly impinging upon protected political speech and association as set forth in *Buckley v. Valeo*, 424 U.S. 1 (1976), *Davis v. FEC,* 128 S. Ct. 2759 (2008), and its progeny and by burdening free expression and association without any compelling justification for doing so, without being narrowly tailored in doing so, and for being overbroad by sweeping within their strictures constitutionally protected advocacy. *See Day v. Holahan,* 34 F.3d 1356 (8th Cir. 1994).

More specifically, WRTL claims that §11.513 reduces the ability of WRTL to participate in judicial elections by mandating significant reporting of independent expenditures and causing the receipt of independent expenditures and "obligated" independent expenditures, above a threshold amount, in support of a nonparticipating judicial candidate to release all publicly financed candidates from their agreed to expenditure limits.

2.  WRTL seeks to have §11.513 declared unconstitutional in violation of the First and Fourteenth Amendments. WRTL also seeks to have enforcement of §11.513 permanently enjoined. This issue should be resolved promptly so that WRTL and those similarly situated will not be chilled in their free expression and association or risk being unlawfully enjoined or found in violation of Wisconsin election laws as a result of having engaged in constitutionally-protected political expression in the upcoming election.

### Jurisdiction and Venue

3.  This action arises under Section 1 of the Civil Rights Act of 1871, 17 Stat. 13, 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the Constitution of the United States.

4.  The jurisdiction of this Court over the claims arising under 42 U.S.C. § 1983 is founded upon 28 U.S.C. § 1343(a). The jurisdiction over the claims arising under the First and Fourteenth Amendments is founded upon 28 U.S.C. §§ 1331 and 1343(a).

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b).

**Parties**

6. Plaintiff Wisconsin Right to Life Political Action Committee ("WRTL") is a non-profit political action committee organized in the State of Wisconsin. Ms. Barbara Lyons is the Executive Director of WRTL. Its headquarters are located in Milwaukee, Wisconsin.

7. Defendant members of the Government Accountability Board are sued in their official capacities: Judge Michael Brennan, Judge William Eich, Judge Gerald Nichol, Judge Thomas Cane, Judge Thomas Barland, and Judge Gordon Myse. Pursuant to Wis. Stat. § 5.05, the Government Accountability Board is responsible for the administration of Chapter 11 of the Wisconsin Statutes, including the statutes challenged here.

8. Defendant Dawn Marie Sass is sued in her official capacity as Wisconsin State Treasurer. Pursuant to Wis. Stat. § 11.515, the Wisconsin State Treasurer is responsible for administering the democracy trust fund from which candidates participating in public financing receive disbursements.

9. Defendant John T. Chisholm is sued in his official capacity as Milwaukee County District attorney. Pursuant to Wis. Stat. § 11.60(4), actions for violations of Chapter 11 "may be brought by the board or by the district attorney for the county where the defendant resides or, if the defendant is a nonresident, by the district attorney for the county where the violation is alleged to have occurred. For purposes of this subsection, a person other than a natural person resides within a county if the person's principal place of operation is located within that county."

**Facts**

10.     The Wisconsin Legislature created Chapter 11, "Campaign Financing," to govern campaign finance law. Wis. Stat. § 11.001. Chapter 11 was amended by Wisconsin Act 89, also known as the "Impartial Justice Bill," signed into law on December 1, 2009, to create a public rescue funds scheme for Wisconsin Supreme Court candidates. The provision at issue became effective December 16, 2009. Wis. Stat. § 991.11.

11.     Elections for the Wisconsin Supreme Court involve the expenditure of large amounts of money. In the 2007 Supreme Court election, candidate Linda Clifford raised and spent over $1.2 million, while her opponent, Annette Ziegler, raised and spent over $1.4 million. Political Action Committees ("PACs") spent over $63,000 on Clifford's campaign and $36,000 on Ziegler's campaign; issue ads in support of Clifford spent an estimated $400,000, while those supporting Ziegler spent an estimated $2.6 million. In the 2008 Supreme Court election, candidate Louis Butler spent over $770,000, while his opponent, Michael Gableman, spent over $410,000. In this election, PACs spent over $470,000 on Butler's campaign and $77,000 on Gableman's campaign. Issue ads in support of Butler spent an estimated $1.45 million, and those supporting Gableman spent an estimated $2.7 million. In the last Supreme Court election in 2009, Randy Koschnick spent nearly $190,000 on his campaign, while Shirley Abrahamson spent over $1.3 million. PACs spent over $580,000 on Abrahamson's campaign, though only spending several hundred dollars on Koschnick's campaign. Although there are no current estimates on the amount spent on issue ads during the 2009 campaign, there were two major ad campaigns in support of Abrahamson, with one major ad campaign in support of Koschnick. It is likely that similar amounts will be spent on the election for Supreme Court that will occur in 2011.

**VERIFIED COMPLAINT**                     -4-

12. The purpose of Chapter 11 is "to encourage the broadest possible participation in financing campaigns by all citizens of the state, and to enable candidates to have an equal opportunity to present their programs to the voters." 11.001(1). It is designed to stimulate "vigorous campaigns on a fair and equal basis and to provide for a better informed electorate," *id*, to prevent unfair advantage to incumbents, *id.* at 11.001(2), and "to protect the integrity of the election process, *id.* at 11.001(3).

13. Wisconsin Statute § 11.513 is comprised of two parts: the reporting requirement, *id.* at § 11.513(1), and the rescue fund, § 11.513(2). The statute states:

> (1) If any person makes, or becomes obligated to make, by oral or written agreement, an independent disbursement in excess of $1,000 with respect to a candidate for the office of justice at a spring primary or election, that person shall file with the board a notice of the disbursement or obligation to make the disbursement. Any such person shall file reports of such disbursements or obligations to make such disbursements on the 15th or last day of the month that immediately follows the date of the disbursement or the obligation to make the disbursement, whichever comes first, except that, within 6 weeks prior to the date of the spring primary election, if a primary is held, and within 6 weeks prior to the date of the spring election, the person shall file such reports within 24 hours after each independent disbursement is made or obligated to be made. Any such person shall file an additional report after each additional $1,000 of disbursements are made or obligated to be made.
>
> (2) When the aggregate independent disbursements against an eligible candidate for an office or for the opponents of that candidate exceed 120 percent [or $360,000 in a general election] of the public financing benefit for that office in any campaign, the board shall immediately credit that candidate's account with an additional line of credit equivalent to the total disbursements made or obligated to be made, but not to exceed 3 times the public financing benefit for the applicable office.

14. Pursuant to 11.60(1), "any person, including any committee or group, who violates [Chapter 11] maybe be required to forfeit not more than $500 for each violation." Additionally, under 11.60(2), "any person, including any committee or group, who is delinquent in filing a report required by this chapter may be required to forfeit not more than $50 or one percent of the annual salary of the

office for which the candidate is being supported or opposed, whichever is greater, for each day of delinquency."

15. WRTL intends to raise and spend in excess of $1,000 on independent expenditures in support of a 2011 Wisconsin Supreme Court candidate because it believes it is the clearest way to communicate with the voters. It has been involved in Wisconsin supreme court races in the past, showing support through election flyers, endorsement letters, and articles, and has made expenditures exceeding $1,000 in prior elections. Attached as Exhibit 1 are articles showing WRTL's support of candidates in the last three contested elections for Wisconsin Supreme Court. Attached as Exhibit 2 is a PAC report showing expenditures in excess of $1,000 in Justice Patience D. Roggensack's 2003 race for the Wisconsin Supreme Court.

16. Given the extreme likelihood that the $360,000 trigger for rescue funds will be pulled and that publicly-financed candidates will be released from their expenditure limitations and given dollar for dollar matching funds, WRTL will not make its independent expenditures supporting a nonparticipating candidate or opposing a participating candidate in the 2011 election. Therefore, the rescue fund irreparably harms WRTL by chilling the exercise of First Amendment rights to make independent expenditures to further the campaigns of nonparticipating judicial candidates.

17. The reporting requirement also substantially burdens WRTL's right to engage in protected forms of political expression in this and in future elections. WRTL is irreparably harmed by engaging in such protected expression and because their reports will trigger the rescue fund, WRTL will in fact not so exercise its First Amendment rights in future elections.

18. WRTL has no adequate remedy at law.

# COUNT I

## THE FUND'S INDEPENDENT EXPENDITURE REPORTING REQUIREMENTS ARE NOT NARROWLY TAILORED TO SERVE A COMPELLING INTEREST.

18. WRTL realleges the preceding paragraphs.

19. Wisconsin Statute § 11.513 states:

(1) If any person makes, or becomes obligated to make, by oral or written agreement, an independent disbursement in excess of $1,000 with respect to a candidate for the office of justice at a spring primary or election, that person shall file with the board a notice of the disbursement or obligation to make the disbursement. Any such person shall file reports of such disbursements or obligations to make such disbursements on the 15th or last day of the month that immediately follows the date of the disbursement or the obligation to make the disbursement, whichever comes first, except that, within 6 weeks prior to the date of the spring primary election, if a primary is held, and within 6 weeks prior to the date of the spring election, the person shall file such reports within 24 hours after each independent disbursement is made or obligated to be made. Any such person shall file an additional report after each additional $1,000 of disbursements are made or obligated to be made.

20. Under the First Amendment to the U.S. Constitution and *Buckley v. Valeo*, 424 U.S. 1 (1976), *Davis v. FEC,* 128 S. Ct. 2759 (2008), and its progeny, a state public campaign financing scheme violates the right to free political speech where it goes beyond mere promotion of the voluntary use of public funding and improperly injects the state into the political process by attempting to equalize the relative financial resources of candidates—thereby coercing involuntary participation in public campaign financing by punishing and burdening those entities like WRTL, who intend to make independent expenditures over $1,000 supporting a nonparticipating candidate or opposing a participating candidate. *Day v. Holahan,* 34 F.3d 1356 (8th Cir. 1994).

21. The purpose of the reporting requirement is to assist the Board in implementing the rescue fund. However, the corruption-related interest cited by the *Buckley* Court remains "the only legitimate and compelling government interest [] thus far identified for restricting campaign finances."

*FEC v. National Conservative Political Action Committee*, 470 U.S. 480, 496-97 (1985). Therefore, the State's interest in effectuating the trigger provision is not a sufficiently compelling interest to justify restriction of the WRTL's First Amendment rights by imposing such a narrow window in which to report expenditures. *Davis v. FEC,* 128 S. Ct. at 2775.

22. Further, the reporting requirement's 24-hour rule is "patently unreasonable" and is not narrowly tailored. *See Citizens for Responsible Gov't v. Davidson*, 236 F.3d 1174, 1197 (10th Cir. 2000).

## COUNT II

### THE INDEPENDENT EXPENDITURE REPORTING REQUIREMENT IS VAGUE.

23. WRTL realleges the preceding paragraphs.

24. Wisconsin Statute 11.513(1) states:

If any person makes, or becomes obligated to make, by oral or written agreement, an independent disbursement in excess of $1,000 with respect to a candidate for the office of justice at a spring primary or election, that person shall file with the board a notice of the disbursement or obligation to make the disbursement. Any such person shall file reports of such disbursements or obligations to make such disbursements on the 15th or last day of the month that immediately follows the date of the disbursement or the obligation to make the disbursement, whichever comes first, except that, within 6 weeks prior to the date of the spring primary election, if a primary is held, and within 6 weeks prior to the date of the spring election, the person shall file such reports within 24 hours after each independent disbursement is made or obligated to be made. Any such person shall file an additional report after each additional $1,000 of disbursements are made or obligated to be made.

23. A law is void for vagueness "if it fails to give fair warning of what is prohibited, if it fails to provide explicit standards for the persons responsible for enforcement and thus creates a risk of discriminatory enforcement, and if its lack of clarity chills lawful behavior." *Anderson v. Milwaukee*

*County*, 433 F.3d 975, 978 (7th Cir. 2006). Laws regulating First Amendment freedoms are closely examined to ensure they are precisely drafted. *Buckley v. Valeo*, 424 U.S. 1, 40-41 (1976).

24. The reporting requirement requires nonprofit entities like WRTL to not only report actual expenditures but to report the possibility of such an expenditures, or "obligations," without clearly articulating what amounts to such an obligation.

25. By requiring these disclosures, the reporting requirement is vague, unconstitutionally burdening the rights of free speech and free association in violation of the First Amendment.

## COUNT III

### THE INDEPENDENT EXPENDITURE REPORTING REQUIREMENT IS OVERBROAD.

26. WRTL realleges the preceding paragraphs.

27. Wisconsin Statute 11.513(1) states:

If any person makes, or becomes obligated to make, by oral or written agreement, an independent disbursement in excess of $1,000 with respect to a candidate for the office of justice at a spring primary or election, that person shall file with the board a notice of the disbursement or obligation to make the disbursement. Any such person shall file reports of such disbursements or obligations to make such disbursements on the 15th or last day of the month that immediately follows the date of the disbursement or the obligation to make the disbursement, whichever comes first, except that, within 6 weeks prior to the date of the spring primary election, if a primary is held, and within 6 weeks prior to the date of the spring election, the person shall file such reports within 24 hours after each independent disbursement is made or obligated to be made. Any such person shall file an additional report after each additional $1,000 of disbursements are made or obligated to be made.

28. An overbroad law is to be facially invalidated if the impermissible applications of the law are substantial when compared to the law's legitimate application. *Commodity Trends Serv. v. Commodity Futures Trading Comm'n,* 149 F.3d 679, 688 n. 4 (7th Cir. 1998) (*quoting Broadrick v.*

**VERIFIED COMPLAINT**                               -9-

*Oklahoma*, 413 U.S. 601, 615 (1973)). As such, the overbreadth doctrine prevents a law from having a deterrent effect on protected speech. *Id.*

29. The reporting requirement requires nonprofit entities like WRTL to not only report actual expenditures but to report the possibility of such an expenditures, even if the expenditure never actually takes place.

30. By requiring these disclosures, the reporting requirement is overbroad, unconstitutionally burdening the rights of free speech and free association in violation of the First Amendment.

## COUNT IV

### THE RESCUE FUND UNCONSTITUTIONALLY BURDENS AND PENALIZES SPEECH AND IS NOT NARROWLY TAILORED TO SERVE A COMPELLING STATE INTEREST.

31. WRTL realleges the preceding paragraphs.

32. Wisconsin Statute 11.513(2) states:

When the aggregate independent disbursements against an eligible candidate for an office or for the opponents of that candidate exceed 120 percent of the public financing benefit for that office in any campaign, the board shall immediately credit that candidate's account with an additional line of credit equivalent to the total disbursements made or obligated to be made, but not to exceed 3 times the public financing benefit for the applicable office.

33. This rescue fund provides a direct, dollar-for-dollar public subsidy to participating candidates whenever an independent expenditure is made that either opposes a participating candidate with a nonparticipating opponent, or supports a nonparticipating candidate with a participating opponent. Therefore, this statute amounts to an unconstitutional content-based regulation of political free speech, in that it treats speech differently depending on whether it opposes or favors a

**VERIFIED COMPLAINT** -10-

publicly-funded candidate. *Davis v. FEC,* 128 S. Ct. at 2771; *Day v. Holahan,* 34 F.3d 1356 (8th Cir. 1994).

34.   Under the First Amendment to the U.S. Constitution and *Buckley v. Valeo*, 424 U.S. 1 (1976), *Davis v. FEC,* 128 S. Ct. 2759 (2008), and its progeny, a state public campaign financing scheme violates the right to free political speech where it goes beyond mere promotion of the voluntary use of public funding, and improperly injects the state into the political process by attempting to equalize the relative financial resources of candidates.

35.   WRTL faces imminent injury to their First Amendment rights to free political speech and free association as a direct result of this statutory scheme. The state's payment of matching funds—which, unlike an independent expenditure, is directly controlled by the participating candidate—neutralizes the independent expender's voice when it makes an independent expenditure. The knowledge that making an independent expenditure that opposes a government-funded candidate will directly result in that candidate receiving a dollar-for-dollar matching public subsidy (with no effect on that candidate's spending limit) creates a chilling effect on WRTL's free exercise of protected speech, and imposes a climate of self-censorship that is inimical to our American heritage of unfettered political discourse. In so doing, the statute also encroaches upon the ability of like-minded persons to pool their resources in furtherance of common political goals in violation of WRTL's right to freedom of association. *See Day v. Holahan*, 34 F.3d 1356, 1360 (8th Cir. 1994).

36.   Additionally, the rescue fund creates a content-based regulation of speech opposing a funded candidate that is not narrowly drawn to serve a compelling interest. *See Day*, 34 F.3d at 1360-61. Therefore, the rescue fund is an unconstitutional violation of the First and Fourteenth Amendments.

## PRAYER FOR RELIEF

**WHEREFORE**, WRTL respectfully prays the Court to:

(1)     Declare § 11.513(1) unconstitutional;

(2)     Declare § 11.513(2) unconstitutional;

(3)     Enjoin Defendants, their agents, and successors, from acting pursuant to §§ 11.513(1) and 11.513(2);

(4)     Grant them their costs of this action, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988 and any other applicable authority; and

(5)     Grant them such other relief as may be just and equitable.

Dated: December 18, 2009

Respectfully submitted,

/s/Sarah E. Troupis
James Bopp, Jr., Ind. #2838-84*
Anita Y. Woudenberg, Ind. #25162-64*
Sarah E. Troupis, Wis. #1061515
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434 telephone
812/234-3685 facsimile
*Counsel for WRTL*
**Pro Hac Vice Motion Pending*

## VERIFICATION

      I SWEAR (OR AFFIRM) UNDER THE PENALTIES FOR PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING STATEMENTS MADE IN THE FOREGOING VERIFIED COMPLAINT CONCERNING ME AND MY ORGANIZATION ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND UNDERSTANDING.


Dated: December ____, 2009                   _____
                                                           Barbara Lyons, Executive Director
                                                           Wisconsin Right to Life

## VERIFICATION

I SWEAR (OR AFFIRM) UNDER THE PENALTIES FOR PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING STATEMENTS MADE IN THE FOREGOING VERIFIED COMPLAINT CONCERNING ME AND MY ORGANIZATION ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND UNDERSTANDING.

Dated: December 18, 2009

Barbara Lyons, Executive Director
Wisconsin Right to Life