IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN RIGHT TO LIFE POLITICAL
ACTION COMMITTEE,

       Plaintiff,

    v.                                               Case No. 09-CV-764

MICHAEL BRENNAN, in his official capacity as a
member of the Government Accountability Board,
WILLIAM EICH, in his official capacity as a
member of the Government Accountability Board,
GERALD NICHOL, in his official capacity as a
member of the Government Accountability Board,
THOMAS CANE, in his official capacity as a
member of the Government Accountability Board,
THOMAS BARLAND, in his official capacity as a
member of the Government Accountability Board,
GORDON MYSE, in his official capacity as a
member of the Government Accountability Board,
DAWN MARIE SASS, in her official capacity as
Wisconsin State Treasurer, and JOHN T.
CHISHOLM, in his official capacity as Milwaukee
County District Attorney,

       Defendants.

---

MEMORANDUM IN SUPPORT OF MOTION OF COMMON CAUSE IN WISCONSIN,
LEAGUE OF WOMEN VOTERS OF WISCONSIN EDUCATION FUND,
AND WISCONSIN DEMOCRACY CAMPAIGN TO INTERVENE

---

This Memorandum is submitted in support of the motion of Common Cause in Wisconsin, Wisconsin Democracy Campaign, and League of Women Voters of Wisconsin Education Fund. (collectively, "Proposed Intervenors") to intervene in the above-captioned action pursuant to Rule 24 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Proposed Intervenors apply pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure for leave to intervene as of right as defendants in this action or, in the alternative, for permissive intervention pursuant to Rule 24(b)(2). Proposed Intervenors seek to defend the constitutionality of Wisconsin Statute § 11.513, which instituted reforms to Wisconsin's system for election of Supreme Court justices, by lowering contribution limits for Supreme Court races, requiring that large contributions to the campaigns of judicial candidates be disclosed, and providing for increased public financing of judicial candidates engaged in high-spending races. Proposed Intervenors have a significant interest in this action that will be impaired absent intervention. Each of the Proposed Intervenors is a large non-profit membership organization. Each Proposed Intervenor and its members strongly support Wisconsin Statute § 11.513 and strongly advocated for the passage of Wisconsin Act 89, also known as the "Impartial Justice Bill," which instituted § 11.513.

Applicants are entitled to intervention as of right if their application is timely, they have real interests in the action, disposition of the action may affect those interests, and no existing party adequately represents their interests. Fed. R. Civ. P. 24(a)(2). Because Proposed Intervenors meet this standard, intervention as of right should be granted. In the alternative, permissive intervention should be granted pursuant to Fed. R. Civ. P. 24(b) to allow resolution of the questions of fact and law that the Proposed Intervenors' defense has in common with that of the current defendants.

## STATEMENT OF FACTS

Common Cause in Wisconsin (CC/WI), with approximately 3,000 members, is Wisconsin's largest non-partisan reform organization. Ex. A, ¶ 3. CC/WI is a non-profit

advocacy group focused on campaign finance, ethics and lobby reform, open meetings law and other issues concerning the promotion and maintenance of "clean," open, responsive, and accountable government. *Id.* The independence of the judiciary is of paramount importance to CC/WI. It is CC/WI's position that the public financing of judicial elections is preferable to private financing and is imperative to ensure that judges remain impartial arbiters who are not beholden to narrow, special and private interests. CC/WI has argued that public financing provides a beneficial incentive for candidates to abide by voluntary spending limits and thereby reduces the risk or perception that private contributions corrupt the election process and undermine the independence of the judiciary. *Id.* ¶ 4. CC/WI believes that public confidence in democratic institutions and the judiciary has been — and continues to be — eroded so long as money dominates elections. *Id.* ¶ 5. This continues to perpetuate the perception that elected officials are beholden to the narrow, special interests that provide most of the money spent in elections today. CC/WI believes that public financing is a proven solution to this problem. *Id.*

CC/WI lobbied and advocated for the consideration, passage and enactment of the Impartial Justice Bill. Ex. A, ¶ 6. CC/WI has pursued such legislation for the last five years, and specifically lobbied for the existing law as it was introduced in legislative form in January 2009. *Id.* As part of its advocacy efforts, CC/WI held informational forums in cities throughout Wisconsin and made presentations to groups and organizations around the state to explain the need for such a measure. CC/WI contacted state newspaper editorial boards around Wisconsin urging endorsement of the Impartial Justice Bill, and contacted and directly lobbied members of the Wisconsin Legislature. *Id.* ¶ 7. CC/WI tracked the legislative process and progress of the Impartial Justice Bill and communicated with legislators regarding appropriate changes and revisions to the Bill during the legislative process. *Id.*

The Wisconsin Democracy Campaign ("WDC") is a nonprofit, nonpartisan political watchdog group dedicated to clean government. Ex. B, ¶ 3. The WDC advocates for a real democracy that allows the common good to prevail over narrow interests by reinforcing and protecting the values of honesty, fairness, transparency, accountability, citizen participation, competition, and respect for constitutional rights and the rule of law. *Id.* ¶ 4. The WDC tracks the flow of money into state politics, fights government corruption, and works for campaign finance reform, fair elections, judicial integrity, media democracy, open and transparent government, and democracy reform in areas such as state legislative and congressional redistricting, ethics, and lobbying. *Id.* ¶ 5. The WDC pursues these objectives through research, citizen education, community outreach, coalition building, and direct advocacy. *Id.*

The WDC made enactment of the Impartial Justice Bill a reform priority six and a half years ago. Ex. B, ¶ 6. Last year, the WDC launched its Judicial Independence Project and an accompanying website -- impartialjustice.org -- to raise awareness of new threats to judicial independence resulting from record-breaking special interest fundraising and campaign spending in the last three Supreme Court races and to intensify the push for reform. *Id.* To further raise support for the Impartial Justice Bill, the WDC organized 20 forums and town hall meetings on judicial independence, sponsored a radio ad that ran on 74 stations statewide, and sponsored Internet ads on the website of the Milwaukee Journal Sentinel and onWisPolitics.com. *Id.*

The League of Women Voters of Wisconsin Education Fund (LWVWIEF) is a nonpartisan political organization that encourages informed and active participation in government, works to increase understanding of major public policy issues, and influences public policy through education and advocacy. Ex. C, ¶ 3. LWVWIEF has approximately 1,500 members and supporters around the state and maintains 17 local Leagues. *Id.* LWVWIEF is

affiliated with the League of Women Voters of United States, which has taken a formal, public position supporting public financing of elections, first adopted in 1974 and revised in 1982. *Id.* ¶ 4. The League believes that the methods of financing political campaigns should ensure the public's right to know, combat corruption and undue influence, enable candidates to compete more equitably for public office and allow maximum citizen participation in the political process. *Id.* Based on this national position, the Wisconsin League has supported public financing for state offices, including the Supreme Court, for more than three decades. *Id.*

In particular, LWVWIEF has supported the Impartial Justice Bill and its precursors in a number of legislative sessions. Ex. C, ¶ 5. In the most recent session, when the Bill was enacted, LWVWIEF communicated directly with legislators about the importance of the Bill, and reviewed and proposed amendments throughout the legislative process. *Id.* Moreover, LWVWIEF educated its members about the Bill's provisions and importance and urged them to communicate with legislators individually. *Id.*

## ARGUMENT

### I.     INTERVENTION AS OF RIGHT SHOULD BE GRANTED.

Applicants are entitled to intervention as of right if they demonstrate that: (1) the application is timely; (2) the applicants have an interest relating to the property or transaction that is the subject of the action; (3) disposition of the action as a practical matter may impede or impair the applicants' ability to protect that interest; and (4) no existing party adequately represents the applicants' interest. Fed. R. Civ. P. 24(a)(2); *see also Nissei Sangyo America, Ltd. v. United States* 31 F.3d 435, 439 (7th Cir. 1994). The Proposed Intervenors meet all of these requirements here.

### A.     Proposed Intervenors Have Acted in a Timely Manner.

The timeliness requirement for intervention does not "impos[e] a precise time limit," but rather "means that an intervenor must 'act with dispatch.'" *Nissei Sangyo America*, 31 F.3d at 438 (quoting *Atlantic Mutual Ins. Co. v. Northwest Airlines, Inc.*, 24 F.3d 958, 960 (7th Cir. 1994)). In determining whether a motion to intervene is timely, the court considers four factors: "'(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances.'" *Heartwood, Inc. v. U.S. Forest Service, Inc.*, 316 F.3d 694, 701 (7th Cir. 2003) (quoting *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000)). "Though the passage of time itself is not the only factor, rather the 'most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case.'" *Nissei Sangyo America*, 31 F.3d at 438 (quoting 7C Charles Alan Wright, et al., *Federal Practice and Procedure: Civil 2d* § 1916 (1986)).

The Proposed Intervenors' motion is being filed within one and a half months of the initiation of this litigation. Although the parties have filed initial pleadings, no substantial proceedings have yet occurred. No substantive motion has yet been filed by either party. No pre-trial conference has yet taken place, and the first is scheduled for February 9, 2010. Moreover, the plaintiff has indicated that it intends to file an amended complaint adding both new parties and new claims. Preliminary Pretrial Conf. Rep. ¶ 4 (Doc. 25). The existing parties have proposed a schedule for discovery, dispositive motions, and trial, *see id.* ¶¶ 6-9, and the Proposed Intervenors are prepared to comply with that schedule. Because intervention will neither delay this litigation nor require the Court or the parties to revisit any proceedings already undertaken,

intervention will cause neither delay nor prejudice. Under these circumstances, this motion is unquestionably timely.

### B. Proposed Intervenors Have Interests in the Subject of the Action, Which May, as a Practical Matter, Be Impeded Absent Intervention.

Intervention must be permitted as of right where the movant intervenor has an "interest relating to the property or transaction that is the subject of the action," and disposition of the case "may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. Proc. 24(a)(2). In discussing intervention as of right, a leading treatise states:

> It is generally agreed that in determining whether disposition of the action will impede or impair the applicant's ability to protect his interest the question must be put in practical terms rather than in legal terms. The central purpose of the 1966 amendment was to allow intervention by those who might be practically disadvantaged by the disposition of the action and to repudiate the view…that intervention must be limited to those who would be legally bound as a matter of *res judicata*.

13B Wright, Miller & Kane, Federal Practice and Procedure: Jurisdiction 2nd 1908 at 301 (1986) (footnotes omitted); *see also Lake Investors Development Group, Inc. v. Egid Development Group*, 715 F.2d 1256, 1260 (7th Cir. 1983) ("'impairment' exists if the decision of a legal question would, *as a practical matter*, foreclose rights of the proposed intervenor in a subsequent proceeding") (emphasis added).

There is no question that the Proposed Intervenors will be "practically disadvantaged" if plaintiff succeeds in overturning Wis. Stat. § 11.513. The Proposed Intervenors and their members benefit directly from Wis. Stat. § 11.513. The Proposed Intervenors and their members have invested tremendous effort, resources, and time over the past several years in seeking the passage of the Impartial Justice Bill. *See* Ex. A, ¶¶ 6-7; Ex. B, ¶ 6; Ex. C, ¶ 5. Each of the Proposed Intervenors provides voter education services to its members and the public, *see* Ex. A

¶ 8; Ex. B, ¶ 7; Ex. C, ¶ 6; the transparency that Wis. Stat. § 11.513 creates as to judicial elections will greatly facilitate that effort. Indeed, one of the WDC's primary functions is to track the flow of money spent in state politics. Ex. B, ¶¶ 5, 7. Wis. Stat. § 11.513(a), which requires disclosure of large contributions to judicial campaigns, is directly targeted to permit such tracking of judicial campaign spending. And the Proposed Intervenors' members are not only Wisconsin voters who will benefit from the conduct of fair and transparent elections of Supreme Court Justices, but also potential litigants before the Wisconsin Supreme Court. *See* Wis. Stat. § 11.001(1) ("The legislature finds and declares that our democratic system of government can be maintained only if the electorate is informed. ... One of the most important sources of information to the voters is available through the campaign finance reporting system."). Each of these direct benefits will be lost if the statute is invalidated.

The Seventh Circuit recently made clear that a "statute's direct beneficiaries" — like the Proposed Intervenors and their members here — have the form of "'interest' required for intervention as a matter of right" in a suit challenging the validity of the statute. *See Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009) (reversing denial of motion to intervene by an association seeking to defend against a challenge to a state statute). As groups whose primary function is to provide education and information regarding elections and to improve the transparency of election and campaign financing, the Proposed Intervenors will be "directly rather than remotely harmed by the invalidation of the statute." *Id.* Accordingly, they have the interest required under Rule 24(a), and that interest "may as a practical matter" be impaired if the

Proposed Intervenors are not permitted to defend their interest in this litigation. Fed. R. Civ. Proc. 24(a)(2).[1]

Several other courts have held, like the Seventh Circuit, that organizations like the three Proposed Intervenors, who worked to have a challenged statute enacted and whose members would benefit from the statute, were permitted to intervene in a suit challenging the statute. For example, Connecticut Common Cause and Connecticut Citizens Action Group were permitted to intervene in *Green Party of Connecticut v. Garfield*, No. 3:06-CV-01030 (D. Conn.), a case challenging the constitutionality of Connecticut statutes instituting elections reforms. *See* Ex. D at 3 & n.1 (granting permissive intervention, but also noting that "movants can meet all four elements of Rule 24(a)(2)"). Similarly, in *McComish v. Brewer*, No. CV-08-1550 (D. Ariz.), the Clean Elections Institute, Inc., a non-profit organization, was allowed to intervene as of right to help defend Arizona's clean election. Ex. E. Common Cause North Carolina was likewise permitted to intervene in *Jackson v. Leake*, No. 5:06-CV-324 (E.D.N.C.), a case challenging the constitutionality of North Carolina's judicial public financing statute, where Common Cause North Carolina was a strong supporter of the legislation establishing the public financing system. *See* Ex. F. The Ninth Circuit also permitted a public interest group that had sponsored a statute as a ballot initiative to intervene as a matter of right in an action challenging the constitutionality of the statute. *Washington State Bldg. and Constr. Trades Council, AFL-CIO v. Spellman*, 684 F.2d 627, 629-30 (9th Cir. 1982). And the Second Circuit reversed denial of intervention as a

---

[1] Although the Seventh Circuit stated, in a 1985 case, that where a statute is challenged, "the governmental bodies charged with compliance can be the only defendants," Keith v. Daley 764 F.2d 1265, 1269 (7th Cir. 1985), it rejected that view in *Flying J*, when the proponents and beneficiaries of a statute were permitted to intervene as of right to defend the statute's validity.

matter of right by a pharmaceutical association in a suit challenging the validity of a regulation 'from which its members benefit.'" *N.Y. Pub. Interest Research Group, Inc. v. Regents of the University*, 516 F.2d 350, 352 (2d Cir. 1975). *See also Herdman v. Town of Angelica*, 163 F.R.D. 180, 187 (W.D.N.Y. 1995) (public interest group that "took an active role" in drafting a law "has a clear interest in the continuing constitutional viability of that law").

### C. The Existing Parties May Not Adequately Represent the Intervenors' Interests.

The inadequate representation prong of Rule 24(a)(2) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Proposed Intervenors easily meet this "minimal burden" of demonstrating that the State defendant "may not" adequately represent their direct interests.

The Attorney General is required to defend this action.[2] By contrast, the Proposed Intervenors are motivated by their interest in protecting the Impartial Justice Bill, the result of its members' advocacy efforts to promote and maintain a transparent democracy that is free of corrupting influences.

Moreover, the nature of the statute at issue indicates that a governmental official could not adequately represent the interests of the Proposed Intervenors. The very purpose of Wis.

---

[2] The Seventh Circuit has recognized a presumption of adequate representation if "the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors." *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774-75 (7th Cir. 2007) (addressing adequacy of representation of developmentally disabled movant intervenors by officials who movant intervenors "admitted ... [were] responsible for administering the Illinois Medicaid and developmental disabilities programs"). The Attorney General, although required to defend state statutes, is not "charged by law with protecting the interests" of groups like the

Stat. § 11.513 is to expose the state government — in particular, the state-operated election of Supreme Court Justices — to public view. The premise of the statute is that public citizens must themselves be independently educated about their government in order to monitor and further the democratic system of governance. *See* Wis. Stat. § 11.001(1)(campaign finance disclosure system "must make readily available *to the voters* complete information as to who is supporting or opposing which candidate or cause and to what extent") (emphasis added). An officer of the very state government that Wisconsin's campaign finance system seeks to expose for the benefit of Proposed Intervenors and their members "may not" adequately represent the interests of the statute's beneficiaries. *Cf. Bates v. Jones*, 904 F. Supp. 1080, 1087 (N.D. Cal. 1995) (noting, in context of intervention, that "the very act of resorting to a ballot initiative indicates a rift between the initiative's proponents and their elected officials on the issue that underlies the initiative").

## II. IN THE ALTERNATIVE, PERMISSIVE INTERVENTION SHOULD BE GRANTED.

Even if this Court were to conclude that the Proposed Intervenors are not entitled to intervene as of right, the Court should nonetheless exercise its discretion to grant permissive intervention under Fed. R. Civ. P. 24(b)(2). That rule provides:

> Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common. ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

*Id.*

"Rule 24(b) vests district courts with 'considerable discretion' when deciding whether to permit intervention...." *Griffith v. University Hosp., L.L.C.*, 249 F.3d 658, 661-62 (7th Cir.

---

Proposed Intervenors, who advocate for and directly benefit from transparency and fairness in

- 11 -

2001); *see also Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000) ("Permissive intervention under Rule 24(b) is wholly discretionary and will be reversed only for abuse of discretion."). Notably, permissive intervention is not subject to the same limitations as intervention as of right. "Neither the 'impair or impede' requirement nor the 'interest' requirement is repeated in the subpart of Rule 24 that governs permissive intervention." *Flying J*, 578 F.3d at 573; *see also Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers*, 101 F.3d 503, 509 (7th Cir. 1996) (vacating district court's denial of permissive intervention on the ground that movant did not have an interest sufficient to justify intervention; remanding for determination of whether "the applicant ha[d] a claim or defense in common with a claim or defense in the suit"). The Supreme Court has likewise explained that the permissive intervention provision in Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *S.E.C. v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940). Nor must a movant intervenor show inadequate representation by the existing parties; to the contrary, "[i]n the typical permissive-intervention case, a third party wants to join a lawsuit to advocate for the same outcome as one of the existing parties." *Bond v. Utreras*, 585 F.3d 1061, 1070 (7th Cir. 2009). *See also Horne v. Flores*, 129 S.Ct. 2579, 2591 (2009) (noting that permissive intervention had been granted to state legislators to defend state statute even though state attorney general had a "legal duty" to defend the statute).

As the Seventh Circuit has explained, "[a]ll that is required by Rule 24(b)(1)(B), [in addition to timeliness], is that the applicant's claim or defense and the main action have a

---

elections. The presumption thus does not apply here.

question of law or fact in common." *Flying J*, 578 F.3d at 573.[3] Both requirements are amply met here. In defending Wis. Stat. § 11.513 against plaintiff's challenge, the Proposed Intervenors will address the same questions of the statute's effect and validity as will the Attorney General. Both the State defendants and Proposed Intervenors will submit, as appropriate, evidence and argument indicating that the challenged statutory provisions withstand constitutional scrutiny. And permitting the Proposed Intervenors to intervene will not distract from the resolution of those issues by introducing new, separate issues into the litigation.

Moreover, because jurisdiction in this suit is founded on 28 U.S.C. §§ 1331 and 1343(a), Compl. ¶ 4, there can be no doubt that jurisdiction will exist as to the Proposed Intervenors. And, as explained at p. 6-7, *supra*, Proposed Intervenors' motion to intervene is timely, and intervention will neither delay the proceedings nor prejudice the interests of the existing parties.

As the declarations attached to this motion demonstrate, Proposed Intervenors have clear interests in the outcome of this lawsuit. In addition to the common questions of law and fact between Proposed Intervenors' defense and that of the Attorney General, the Proposed Intervenors will be able to draw on their extensive familiarity with the legislative history of the Impartial Justice Bill, as well as campaign finance statutes more generally, to impart factual and

---

[3] The Seventh Circuit has issued conflicting statements as to whether a movant intervenor must also establish Article III standing for permissive intervention. *Compare Bond*, 585 F.3d at 1071 ("In this typical case, the permissive intervenor may not need to show standing for the same reason that not every plaintiff in a lawsuit is required to show standing: As long as there is at least one individual plaintiff who has demonstrated standing to assert these rights as his own, a court need not consider whether the other ... plaintiffs have standing to maintain the suit.") (internal quotation marks omitted), *with Flying J*, 578 F.3d at 573 ("Like anyone who wants to maintain an action in federal court, the [permissive intervenor] has to have standing in the Article III sense."). Whatever standing requirement exists for intervening plaintiffs, there can be no doubt that jurisdiction exists as to the Proposed Intervenors, who seek to intervene as defendants.

historical knowledge that will aid the Court's assessment of the legal issues. *See Korczak v. Sedeman*, 427 F.3d 419, 422 (7th Cir. 2005) (intervention may be permitted where "the resolution of a dispute can be expedited or made more accurate or otherwise improved by allowing someone to enter the litigation …. [S]uch participation is within the power of a district judge to allow if he has a reasonable basis in judicial experience to do so"). Indeed, the ability of intervenors to contribute to the speedy and accurate resolution of the litigation was one of the primary reasons cited by the District Court for the District of Connecticut in permitting intervention by Connecticut Common Cause and others in *Green Party v. Garfield*. *See* Ex. D at 5 ("the additional briefing and argument will only help to facilitate a speedy, fair and accurate resolution of the case"). The Proposed Intervenors' unique and varied perspectives will be valuable to the Court in determining the important and weighty democratic issues raised by this case.

---

Jurisdiction in this suit is founded on 28 U.S.C. §§ 1331 and 1343(a), *see* Compl. ¶ 4; as such, Proposed Intervenors' intervention will not disrupt jurisdiction.

CONCLUSION

For the foregoing reasons, this Court should grant the motion to intervene and order that the accompanying Answer be accepted for filing by the Clerk of the Court.

Respectfully submitted,

COMMON CAUSE IN WISCONSIN
WISCONSIN DEMOCRACY CAMPAIGN
LEAGUE OF WOMEN VOTERS OF
    WISCONSIN EDUCATION FUND

DATED: February 8, 2010.

By: /s/ Edwin J. Hughes
Edwin J. Hughes
State Bar Number 1005126
STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
Post Office Box 1784
Madison, Wisconsin 53701-1784
608.256.0226
Fax: 608.259.2600
ehughes@staffordlaw.com

David W. Carpenter
Tacy F. Flint
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
312.853.7000
Fax: 312.853.7036
dcarpenter@sidley.com
tflint@sidley.com

Monica Youn
Angela Migally
BRENNAN CENTER FOR JUSTICE AT
  NEW YORK UNIVERSITY SCHOOL OF LAW
161 Avenue of the Americas, 12th Floor
New York, NY 100013
212.998.6730
monica.youn@nyu.edu
migallya@exchange.law.nyu.edu