IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

WISCONSIN RIGHT TO LIFE POLITICAL
ACTION COMMITTEE,

    Plaintiff,

v.                                                    Case No. 09-CV-764

MICHAEL BRENNAN, in his official capacity as a
member of the Government Accountability Board,
WILLIAM EICH, in his official capacity as a
member of the Government Accountability Board,
GERALD NICHOL, in his official capacity as a
member of the Government Accountability Board,
THOMAS CANE, in his official capacity as a
member of the Government Accountability Board,
THOMAS BARLAND, in his official capacity as a
member of the Government Accountability Board,
GORDON MYSE, in his official capacity as a
member of the Government Accountability Board,
DAWN MARIE SASS, in her official capacity as
Wisconsin State Treasurer, and JOHN T.
CHISHOLM, in his official capacity as Milwaukee
County District Attorney,

    Defendants.

REPLY IN SUPPORT OF MOTION OF COMMON CAUSE IN WISCONSIN,
LEAGUE OF WOMEN VOTERS OF WISCONSIN EDUCATION FUND,
AND WISCONSIN DEMOCRACY CAMPAIGN TO INTERVENE

    Proposed Intervenors have established that both intervention as of right and permissive intervention are appropriate here. Plaintiff's Opposition does not defeat either basis for intervention. The motion should be granted.

### I. DEFENDANT INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT.

*First*, Plaintiff does not dispute that Proposed Intervenors' motion to intervene was timely filed, as established in Proposed Intervenors' opening Memorandum. *See* Intervention Memo at 6-7. That requirement for intervention has thus been met.

*Second*, contrary to Plaintiff's assertion (at 2-4), Proposed Intervenors do have a protectable interest in this matter. As set forth in Proposed Intervenors' affidavits, Proposed Intervenors have invested significant time and resources into promoting the enactment of Wisconsin's judicial public financing system. Intervention Memo Ex. A ¶¶ 6-7, Ex. B ¶ 6, Ex. C ¶ 5. Both § 11.513(2) (hereinafter "matching funds provision"), which provides for public funding for judicial candidates, and § 11.513(1) (hereinafter "disclosure provision"), which requires reporting of independent expenditures, are integral to the success of that system. Both provisions are part of the system's grant distribution scheme that incentivizes sufficient candidate participation in the program while preventing the waste of public money by tailoring the grant amount to the needs of individual races. Without these provisions, the system would be less effective.

As groups that provide voter education services, that track spending in state campaigns, and that have as their mission transparency in elections, Proposed Intervenors were major advocates for and will be direct beneficiaries of the challenged provisions. *See* Intervention Memo at 8-10 (citing *Flying J., Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009) (reversing denial of motion to intervene by an association seeking to defend against a challenge to a state statute). Just as a protectable interest existed for the trade association seeking to uphold the validity of a state statute in *Flying J*, so too do the Proposed Intervenors have a protectable interest in defending the constitutionality of the statutory system that they and their members

diligently worked to enact. *See Washington State Bldg. and Const. Trades Council, AFL-CIO v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) ("DWW, as the public interest group that sponsored the initiative, was entitled to intervention as a matter of right under Rule 24(a)"); *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861 (8th Cir. 1977) (neighborhood association whose professed purpose was to preserve property values and insure that abortion facilities did not affect the health, welfare, and safety of citizens entitled to intervene in an action challenging the constitutionality of a local ordinance imposing a moratorium on the construction of abortion clinics).

Plaintiff challenges Proposed Intervenors' protectable interest by asserting that "facilitating voter services is not the purpose of Wis. Stat. § 11.513," and that the disclosure provision was "already in place prior to the passage of § 11.513 and continue[s] to be in force." Intervention Opp. at 3-4 (citing Wis. Stat. § 11.06(1)(j)). Plaintiff is wrong on both counts.

To be sure, one purpose of the disclosure provision is to facilitate the administration of the matching funds provision. Yet the disclosure provision also undoubtedly promotes transparency in the election of Supreme Court Justices. Plaintiff claims that Wis. Stat. § 11.06(1)(j), a previously enacted disclosure provision, requires the same "[r]eporting of … expenditures for voter informational purposes" as does the Impartial Justice Act's disclosure provision. Intervention Opp. at 4. That is incorrect. The disclosure provision requires more frequent reporting than existed before the statute's enactment. Although § 11.06(1)(j) does require that independent expenditures be reported, such reports must be filed only once per primary or election cycle, specifically "no earlier than 14 days and no later than 8 days preceding the primary and the election." Wis. Stat. § 11.20(2). By contrast, reports under the Impartial Justice Act's disclosure provision must be filed with much greater frequency. Each

disbursement must be reported "on the 15th or last day of the month that immediately follows the date of the disbursement or the obligation to make the disbursement, whichever comes first," but if the disbursement is made within the six weeks leading up to the primary or election, reports must be made "within 24 hours after each independent disbursement is made or obligated to be made." Wis. Stat. § 11.513(1). An additional report must be filed "after each additional $1,000 of disbursements are made or obligated to be made." *Id.* The real-time reporting required under § 11.513(1) will enable Proposed Intervenors to track spending on judicial elections *as it happens*, when that spending has the potential to affect campaign outcomes — not just after the fact, when all is said and done.

***Third,*** Proposed Intervenors' interest in obtaining the benefits of Wis. Stat. § 11.513 will be substantially impaired or impeded if they are not permitted to intervene in this litigation. Plaintiff's sole argument to the contrary is that Proposed Intervenors could protect their interest in this litigation by "filing an amicus brief." Intervention Opp. at 4. But if participating as an *amicus curiae* were sufficient to preserve a protectable interest in litigation, there would be no need for Rule 24(a) and intervention as of right at all. Indeed, directly contrary to Plaintiff's assertion, the Advisory Committee Notes to Rule 24 make clear that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene[.]" Fed. R. Civ. P. 24 Advisory Committee Notes.

In this case, Proposed Intervenors' participation is essential to avoid impairment of their protectable interest in the validity of § 11.513. Without leave to intervene, Proposed Intervenors will be unable to develop the factual record that is integral to the defense of § 11.513. Plaintiff raises a First Amendment challenge to § 11.513, claiming that the disclosure and matching funds provisions burden its speech and are not narrowly tailored to achieve a compelling state interest.

Plaintiff's challenge raises several issues of fact, including but not limited to, (1) whether the Impartial Justice Act actually burdens speech, (2) the degree to which that speech is burdened, (3) whether the Impartial Justice Act achieves a compelling state interest and (4) whether the Impartial Justice Act is narrowly tailored. These inquiries will require the development of a factual record that explores the history of Supreme Court elections in Wisconsin over the past several years, the extent to which those elections have raised concerns about the role of money and its impact on the perception of impartiality, and the various means proposed to address those concerns that culminated in the passage of the Impartial Justice Bill. Participating as *amici curiae* would not allow Proposed Intervenors to develop and present the factual and historical background that helps to shape and illuminate the burden alleged and the compelling state interest the legislation is intended to further.

Plaintiff cites *Atlantic Mutual Ins. Co. v. Northwest Airlines, Inc.*, 24 F.3d 958, 961 (7th Cir. 1994), in support of its argument that *amicus* participation would adequately protect the Proposed Intervenors' interest in this litigation. Intervention Opp. at 4. But in *Atlantic Mutual*, the movant intervenor "disclaim[ed] any interest in" the cargo that was the subject of the litigation, and sought to intervene solely because it was displeased with "the content of the district judge's opinion." 24 F.3d at 961. As the Seventh Circuit explained, "a judge's rationale is not the 'property or transaction' for purposes of intervention. Indeed, a debate about language of an opinion is not even a case or controversy within the scope of Article III." *Id.* As explained above, Proposed Intervenors have a substantial interest in this litigation, and can adequately protect that interest only by intervening.

***Fourth*,** Proposed Intervenors' interest in this litigation may not be adequately represented by the existing parties.  As explained in Proposed Intervenors' opening Memorandum, the inadequate representation prong of Rule 24(a)(2) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972).  Intervention Memo. at 10-11.

As Plaintiff has acknowledged, the Attorney General "represents the state of Wisconsin in defending Wis. Stat. § 11.513," Intervention Opp. at 5, and does not represent the interests of Proposed Intervenors and their members.  As a result, there are several stages in the adjudication of this matter where the interests of Proposed Intervenors and the State of Wisconsin may diverge.  For example, the different institutional positions of Proposed Intervenors and the Attorney General may impact strategy at the discovery stage.  As explained above, a vigorous defense of the statute may well require developing a factual record regarding recent Supreme Court elections.  The victors in those elections, of course, presently sit on the Wisconsin Supreme Court.  The Attorney General and attorneys in his office appear before the Supreme Court more frequently than any other attorneys.  This litigation may thus give rise to a conflict between two of the Attorney General's official functions:  defending the state law challenged here, which may include the presentation of criticisms of the campaigns of sitting Supreme Court Justices, and defending the state in current litigation before those same Justices.

The United States Supreme Court has explained that when a government party is required, as the Attorney General is here, to fulfill two functions that may give rise to differing approaches in the litigation, the government party is not an adequate representative of the movant intervenor.  *See Trbovich*, 404 U.S. at 539.  In *Trbovich*, the Court addressed dual

- 6 -

functions required to be performed by the Secretary of Labor.  As the Court explained, "[b]oth functions are important, and they may not always dictate precisely the same approach to the conduct of the litigation.  Even if the Secretary is performing his duties, broadly conceived, as well as can be expected, the union member may have a valid complaint about the performance of 'his lawyer.'  Such a complaint … should be regarded as sufficient to warrant relief in the form of intervention under Rule 24(a)(2)."  404 U.S. at 539.  Unlike the Attorney General, Proposed Intervenors suffer from no such potential institutional conflict, and face no obstacle to providing thoroughly zealous advocacy of the challenged statute.

Furthermore, in the event that this Court holds any of the challenged provisions invalid, the interests of Proposed Intervenors and the State of Wisconsin may diverge with regard to remedy.  In a recent challenge to Connecticut's public financing system in the Second Circuit, Intervenor-Defendants and the State of Connecticut diverged on whether it was the intent of the Connecticut legislature to sever portions of its public financing system.  *See* Brief for Intervenors-Defendants-Appellants at 40-60, *Green Party of Connecticut, et al., v. Garfield, et al.*, Nos. 09-3760-cv(L); 09-3941-cv-(CON) (2nd Cir. Nov. 6, 2009); Reply Brief of Defendants-Appellants at 58-62, *Green Party of Connecticut, et al., v. Garfield, et al.*, Nos. 09-3760-cv(L); 09-3941-cv-(CON) (2nd Cir. Dec. 30, 2009).  Without being granted leave to intervene, the Intervenor-Defendants in that case would not have had the opportunity to adequately defend their position.

Likewise here, without permission to intervene, the interests of Proposed Intervenors will not be adequately represented.  For all of these reasons, Proposed Intervenors are entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2).

## II.    IN THE ALTERNATIVE, PERMISSIVE INTERVENTION SHOULD BE GRANTED.

This court may permit intervention under Rule 24(b)(1)(B) without regard to the "impair or impede" requirement or the "inadequate representation" requirement for intervention as of right.  *See* Intervention Memo at 11-13.  Thus, Plaintiff's incorrect assertion that there is "no evidence of an expected deficiency from the Attorney General in representing voters' interests," Intervention Opp. at 7, is simply beside the point.  As the Seventh Circuit has explained, "[a]ll that is required by Rule 24(b)(1)(B), [in addition to timeliness], is that the applicant's claim or defense and the main action have a question of law or fact in common."  *Flying J*, 578 F.3d at 573.  Plaintiff does not and cannot dispute that Proposed Intervenors' defense would have a "question of law or fact in common" with that of the Attorney General.  *See* Intervention Opp. at 6 (apparently conceding "the common question of law and fact between [Proposed Intervenors'] position and the Attorney General's").

Instead, Plaintiff asserts that "this case involves a question of law," suggesting that "Proposed-Intervenors' involvement *as parties* will do little by way of contributing 'to the speedy and accurate resolution of the litigation.'"  Intervention Opp. at 6.  As explained above, this Court's resolution of the questions of law at issue here will necessarily turn on factual questions.  Determining whether the independent expenditure reporting requirements and the "rescue fund" provisions burden speech and are narrowly tailored to serve a compelling state interest requires a determination of the effect of those provisions on candidates and independent spenders, as well as the nature and extent of the state interest in imposing § 11.513's requirements.  The Proposed Intervenors, with substantial institutional expertise in precisely these matters, are well poised to aid the resolution of this litigation by ensuring that the factual record is complete and accurate.  *See Korczak v. Sedeman*, 427 F.3d 419, 422 (7th Cir. 2005)

(intervention may be permitted where "the resolution of a dispute can be expedited or made more accurate or otherwise improved by allowing someone to enter the litigation …. [S]uch participation is within the power of a district judge to allow if he has a reasonable basis in judicial experience to do so"). Permissive intervention is thus fully warranted here.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Proposed Intervenors' opening Memorandum, this Court should grant the motion to intervene.

>Respectfully submitted,
>
>COMMON CAUSE IN WISCONSIN
>WISCONSIN DEMOCRACY CAMPAIGN
>LEAGUE OF WOMEN VOTERS OF
>WISCONSIN EDUCATION FUND

DATED: March 1, 2010.

By: /s/ *Edwin J. Hughes*
Edwin J. Hughes
State Bar Number 1005126
STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
Post Office Box 1784
Madison, Wisconsin 53701-1784
608.256.0226
Fax: 608.259.2600
ehughes@staffordlaw.com

David W. Carpenter
Tacy F. Flint
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
312.853.7000
Fax: 312.853.7036
dcarpenter@sidley.com
tflint@sidley.com

        Monica Youn
        Angela Migally
        BRENNAN CENTER FOR JUSTICE AT
         NEW YORK UNIVERSITY SCHOOL OF LAW
        161 Avenue of the Americas, 12th Floor
        New York, NY 100013
        212.998.6730
        monica.youn@nyu.edu
        migallya@exchange.law.nyu.edu