IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN RIGHT TO LIFE POLITICAL ACTION
   COMMITTEE,

                       Plaintiff,

      v.

MICHAEL BRENNAN, in his official capacity as
   a member of the Government Accountability Board,
WILLIAM EICH, in his official capacity as
   a member of the Government Accountability Board,
GERALD NICHOL, in his official capacity as
  a member of the Government Accountability Board,
THOMAS CANE, in his official capacity as
  a member of the Government Accountability Board,
THOMAS BARLAND, in his official capacity as
  a member of the Government Accountability Board,
GORDON MYSE, in his official capacity as
  a member of the Government Accountability Board,
DAWN MARIE SASS, in her official capacity as
   Wisconsin State Treasurer, and
JOHN T. CHISHOLM, in his official capacity as
  Milwaukee County District Attorney,

                 Defendants.

OPINION AND ORDER

09-cv-764-vis

---

     This is a civil action challenging the constitutionality of certain provisions of 2009

Wisconsin Act 89, also known as the "Impartial Justice Bill," that governs the public

financing of campaigns for the Office of Justice of the state supreme court.  As a past and

1

future contributor to campaigns for the Office of Justice, plaintiff Wisconsin Right to Life Political Action Committee contends that the Act's independent expenditure reporting and "rescue fund" requirements violate the First Amendment to the United States Constitution by suppressing the political speech of plaintiff and other groups who wish to make an independent expenditure in support of a candidate who opts not to receive public financing. Before the court is the motion of Common Cause in Wisconsin, Wisconsin Democracy Campaign and League of Women Voters of Wisconsin Education Fund to intervene as defendants in this action.  Because I conclude that the proposed intervenors fail to satisfy the criteria under Fed. R. Civ. P. 24 for intervention either as a matter of right or discretion, the motion will be denied.  However, the proposed intervenors will be allowed to participate in this case as *amicus curiae*.

I find the following facts from the record solely for the purpose of deciding the motion to intervene.

FACTS

On December 1, 2009, Governor James Doyle signed into law 2009 Wisconsin Act 89, a campaign financing law relating to elections for the Office of Justice for the Wisconsin Supreme Court.  The Act establishes a "Democracy Trust Fund" for public financing of campaigns for the Office of Justice.  The Democracy Trust Fund is funded first by voluntary

taxpaying contributors, using the "check-off" box on Wisconsin income tax returns, and second, by general state revenues if there is a shortfall in the amount of funds necessary to cover the public financing obligations contemplated in the Act. Wis. Stat. § 20.855(4)(bb). To participate in the Democracy Trust Fund, candidates must meet certain thresholds, including the collection of qualifying contributions as defined in the Act. Wis. Stat. §§11.502-11.508. In return, participating candidates agree to limit their campaign spending to amounts specified in the Act during certain phases of the campaign. Currently, participating candidates are eligible for $100,000 for the primary election and $300,000 for the general election. Wis. Stat. § 11.511.

The Act requires persons who spend more than $1,000 on independent expenditures with respect to a Wisconsin Supreme Court candidate to file a report of the expenditure with the Government Accountability Board on the 15th or last day of the month that immediately follows the disbursement, whichever comes first. Wis. Stat. § 11.513(1). During the six-week period prior to the election, independent expenditures exceeding $1,000 must be reported within 24 hours. Id. When the aggregate independent disbursements against a publicly-financed candidate exceed 120 percent of the public financing benefit (in other words, $360,000 for the general election), the Government Accountability Board must release additional matching public funds to the publicly-financed candidate in an amount up to three times the public financing benefit. Wis. Stat. § 11.513(2).

3

Under Wis. Stat. § 11.60(1), "any person, including any committee or group, who violates [Chapter 11] may be required to forfeit not more than $500 for each violation." Additionally, under § 11.60(2), "any person, including any committee or group, who is delinquent in filing a report required by this chapter may be required to forfeit not more than $50 or one percent of the annual salary of the office for which the candidate is being supported or opposed, whichever is greater, for each day of delinquency." Actions for violations of the Act may be brought by the Government Accountability Board or by the district attorney for the county in which the defendant resides. Wis. Stat. § 11.60(4). The Act goes into effect on December 1, 2010.

On December 18, 2009, plaintiff Wisconsin Right to Life Political Action Committee filed a lawsuit, seeking a declaratory judgment that the independent expenditure reporting requirement and "rescue fund" provisions of Wis. Stat. § 11.513 impose unconstitutional burdens on the rights to free expression and association and a permanent injunction prohibiting the Government Accountability Board, the Wisconsin State Treasurer and the Milwaukee County District Attorney from enforcing the provisions. Defendants are represented in this action by the Wisconsin Attorney General, J.B. Van Hollen.

Common Cause in Wisconsin and the Wisconsin Democracy Campaign are not-for-profit organizations focused on campaign finance, ethics and lobby reform, open meetings laws and other issues concerning the promotion and maintenance of "clean," open and

accountable government.  The League of Women Voters of Wisconsin Education Fund is

a nonpartisan political organization that encourages informed and active participation in

government, works to increase understanding of major public policy issues and influences

public policy through education and advocacy.  All three groups were strong supporters of

Act 89 and lobbied extensively for its passage, holding forums around the state to inform

citizens of the need for the measure, tracking the legislative process and progress of the bill

and communicating directly with legislators.


OPINION

A.  Intervention as of Right

Under Fed. R. Civ. P. 24(a)(2), an applicant is entitled to intervene as a matter of

right if he can show all of the following:  1) the application is timely; 2) the applicant has an

interest relating to the property or transaction that is the subject of the action; 3) disposition

of the action as a practical matter may impede or impair the applicant's ability to protect

that interest; and 4) no existing party adequately represents the applicant's interest.  To

satisfy the second requirement, the applicant must have an interest "that belongs to the

proposed intervenor rather than to an existing party in the suit," Keith v. Daley, 764 F.2d

1265, 1268 (7th Cir. 1985), and that is "so direct that the applicant would have 'a right to

maintain a claim for the relief sought.'"  Id. (quoting Heyman v. Exchange National Bank

5

of Chicago, 615 F.2d 1190, 1193 (7th Cir. 1980)).  See also Flying J. Inc. v. J.B. Van Hollen, 578 F.3d 569, 571 (7th Cir. 2009) (to intervene as matter of right, applicant must have more than minimal interest required to show Article III standing).

Plaintiff has alleged that by requiring the reporting of independent expenditures above $1,000 and providing "rescue funds" to publicly-financed candidates whose opponents spend more than the public financing benefit, the Act imposes a chilling effect on the political speech of plaintiff and others similarly situated who wish to support a supreme court candidate who opts out of the public financing scheme.  The suit does not call into question the actions of proposed intervenors or impede their ability to continue to lobby for campaign finance reform, track election spending or educate voters.  Nonetheless, proposed intervenors assert that they have a legally protected interest in this lawsuit because they invested significant time and resources into promoting Act 89's enactment and because the Act's challenged provisions are necessary to promote their goals of a publicly financed judicial election system and more transparency in elections.  The Court of Appeals for the Seventh Circuit has held, however, that such generalized, public policy interests are insufficient to create a direct, substantial interest to support intervention as of right.  Keith 764 F.2d 1265 ("right to life" lobbying organization had no right to intervene as defendant in lawsuit challenging constitutionality of abortion law); United States v. 36.96 Acres of Land, 754 F.2d 855 (7th Cir. 1985) (environmental group that had lobbied for laws

protecting Indiana Dunes lacked significant, protected interest in condemnation action by United States to acquire one area of the dunes); Wade v. Goldschmidt, 673 F.2d 182 (7th Cir. 1982) (non-profit group organized to support construction of bridge lacked direct interest in lawsuit alleging that United States and state of Illinois failed to comply with federal statutes in approving construction of bridge).  In fact, where a statute is challenged, "the governmental bodies charged with compliance can be the only defendants." Keith, 764 F.2d at 1269; see also Wade, 673 F.2d at 185.

Contrary to proposed intervenors' contention, the court of appeals did not repudiate this view in Flying J., 578 F.3d 569.  In that case, the court allowed an association of Wisconsin gasoline dealers to intervene in a lawsuit challenging the validity of a law restricting the lowest price at which retail sellers of gasoline could sell their product, but only after the attorney general decided not to appeal after losing the case.  Had the association sought to intervene earlier, "its motion would doubtless (and properly) have been denied on the ground that the state's attorney general was defending the statute and that adding another defendant would simply complicate the litigation." Id. at 572.

This leads to another of the requirements for intervention of right, inadequacy of representation by the existing parties.  Proposed intervenors in this case have failed to show that their interests are not being represented adequately by the state attorney general, who is charged by law to defend the constitutionality of Act 89.  In general, adequacy of

7

representation is presumed "when the party on whose behalf the applicant seeks intervention

is a governmental body or officer charged by law with representing the interests of the

proposed intervenor." Keith, 764 F.2d at 1270.  Although the proposed intervenors suggest

that the attorney general may not wish to criticize sitting supreme court justices in front of

whom he appears regularly and may therefore take a soft approach to defending the statute,

this theory is insufficient to overcome the presumption.  At this early juncture and with

nothing to go on but speculation from the proposed intervenors, I have no basis for finding

the government's representation inadequate.  Cf. Flying J., 578 F.3d at 569 (objection to

intervention on ground that attorney general's representation was adequate evaporated when

attorney general failed to appeal decision finding statute invalid).

In sum, because proposed intervenors have failed to show that they have a direct,

significant interest in this suit that is not being represented adequately by the state attorney

general, they are not entitled to intervene as a matter of right.


B.  Permissive Intervention

Under Fed. R. Civ. P. 24(b), the court may permit anyone to intervene who "has a

claim or defense that shares with the main action a common question of law or fact."

Proposed intervenors argue that they should be allowed to participate in this case as

defendants because they have "substantial institutional experience" regarding the history of

8

Act 89 and campaign finance statutes in general, and can present "factual and historical knowledge" to aid the court.  I recognize the experience that proposed intervenors have to offer and have no doubt that it will be valuable in resolving this case.  However, proposed intervenors can adequately present their position as *amici*.  Conversely, adding them as defendants makes this case unnecessarily more complicated and increases the likelihood of delay.  Accordingly, I decline to grant their motion for permissive intervention, but will allow them to participate in this case as *amicus curiae*.

## ORDER

IT IS ORDERED that the motion of Common Cause in Wisconsin, League of Women Voters of Wisconsin Education Fund and Wisconsin Democracy Campaign to intervene is DENIED.  Proposed intervenors are granted leave to participate in this case as *amicus curiae*.

Entered this 10th day of March, 2010.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge