IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN RIGHT TO LIFE POLITICAL
ACTION COMMITTEE, GEORGE MITCHELL,
and WISCONSIN CENTER FOR ECONOMIC
PROSPERITY,

        Plaintiffs,

        v.                                 Case No. 09-CV-764

MICHAEL BRENNAN, in his official capacity as a
member of the Government Accountability Board,
WILLIAM EICH, in his official capacity as a member
of the Government Accountability Board, GERALD
NICHOL, in his official capacity as a member of the
Government Accountability Board, THOMAS
CANE, in his official capacity as a member of the
Government Accountability Board, THOMAS
BARLAND, in his official capacity as a member of
the Government Accountability Board, GORDON
MYSE, in his official capacity as a member of the
Government Accountability Board, DAWN MARIE
SASS, in her official capacity as Wisconsin State
Treasurer, and JOHN T. CHISHOLM, in his official
capacity as Milwaukee County District Attorney,

        Defendants.

---

MEMORANDUM IN SUPPORT OF RENEWED MOTION OF COMMON CAUSE
IN WISCONSIN, LEAGUE OF WOMEN VOTERS OF WISCONSIN EDUCATION FUND
AND WISCONSIN DEMOCRACY CAMPAIGN TO INTERVENE

---

This Memorandum is submitted in support of the renewed motion of Common Cause in

Wisconsin, Wisconsin Democracy Campaign, and League of Women Voters of Wisconsin

Education Fund. (collectively, "Proposed Intervenors") to intervene in the above-captioned action

pursuant to Rule 24 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This case involves a constitutional challenge to Wisconsin Statutes §§ 11.513, 11.26(1)(am), and 11.26(2)(an), which regulate elections and election campaigns of Supreme Court Justice candidates in Wisconsin. Doc. 45 (Amended Complaint). On February 8, 2010, Proposed Intervenors moved to intervene as defendants in this action, seeking to defend the validity of the challenged statutes. Doc. 28; *see also* Doc. 31 (Memorandum in Support of Motion to Intervene). In so moving, Proposed Intervenors asserted both that they were entitled to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a), and that they should be granted leave to intervene permissively pursuant to Federal Rule of Civil Procedure 24(b). This Court, in an order by Judge Crabb, denied the motion to intervene on March 11, 2010. Doc. 40 ("Intervention Order"). In doing so, the Court emphasized its view — based on the limited information before it at the time — that Proposed Intervenors' interests would be adequately represented by the State defendants. As to intervention as of right, the Court explained, "[a]t this early juncture and with nothing to go on but speculation from the proposed intervenors, I have no basis for finding the government's representation inadequate." Intervention Order at 8. As to permissive intervention, the Court stated that although it had "no doubt" that Proposed Intervenors' participation would "be valuable in resolving this case," "proposed intervenors can adequately present their position as *amici*." *Id.* at 9.

In light of additional information that has come to light regarding the State's defense of the challenged statutory provisions, Proposed Intervenors now renew their previously filed motion to intervene. In particular, the State defendants have definitively indicated that they do not intend to identify any expert or fact witness, to identify or produce any documentary evidence in defense of the challenged provisions, or to conduct any deposition, prior to the dispositive

motion deadline already established in this case.  *See* Ex. A (Letter of A. Migally); Ex. B (Email of T. Bellavia); Ex. C (Defendants' Response to Interrogatories & Defendants' Response to Request for Production of Documents).  In other words, the State Defendants have made clear that they do not intend to create or present to the Court any factual record regarding the existence or extent of any burden imposed on plaintiffs by the challenged statutes, or the nature and extent of the state interests furthered by those statutes.

Proposed Intervenors believe, however, that such factual development is an essential component of the defense of the challenged statutes' constitutional validity.  Although Proposed Intervenors contend that the statutes are constitutional as a matter of law, in the event that the Court disagrees, Proposed Intervenors should also be permitted to defend the constitutionality of the statute as a matter of undisputed fact — for example, that the operation of the statute will not, in fact, result in a burden upon Plaintiffs' constitutional rights.  Because the State defendants have declined to develop or to offer any defense of the statutes based on a factual record, it is now clear that Proposed Intervenors' interests are not adequately represented by the State defendants, and that Proposed Intervenors cannot adequately present their position as *amici*.

## BACKGROUND

Plaintiffs assert that their rights under the First Amendment will be infringed by the Impartial Justice Act, a recently enacted package of reforms aimed at protecting the integrity of Wisconsin's highest court. The package included the creation of a voluntary public financing system for candidates for Supreme Court Justice. Plaintiffs challenge two sets of provisions of the Act:  (1) the Act's provision for additional disbursements to a publicly financed candidate when third parties make expenditures in support of that candidate's traditionally financed opponent that exceed 120% of the public financing benefit, *see* Wis. Stat. § 11.513(2), as well as the reporting

requirement for independent expenditures enacted in order to implement the additional disbursements provision, *see* Wis. Stat. § 11.513(1); and (2) the Act's provision limiting contributions to campaigns for Supreme Court Justice to $1,000, *see* Wis. Stat. §§ 11.26(1)(am), (2)(an). Am. Compl. ¶ 1. Specifically, Plaintiffs assert that the Act's grant distribution scheme discourages the speech of supporters of candidates who do not participate in the public financing program (hereinafter "traditionally funded candidates") by discouraging those supporters from making campaign expenditures past a certain threshold. *Id.* Plaintiffs further assert that the Act's reporting requirements and limitations on contributions are invalid. *Id.*

On February 8, 2010, Proposed Intervenors moved to intervene in this litigation in order to support the validity of the challenged statutory provisions. Proposed Intervenors argued that they were entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a). *See* Memo in Support at 5-11. As Proposed Intervenors established in the Memorandum in Support of their initial Motion to Intervene, each of the three Proposed Intervenors was heavily involved in advocating for passage of the Impartial Justice Act, and the Proposed Intervenors and their members will directly benefit from execution of the Act. Memo in Support at 2-5 (citing Declarations of Proposed Intervenors). Moreover, Proposed Intervenors also established that their intervention was timely, *id.* at 6-7, and Plaintiffs did not contest the timeliness of Proposed Intervenors' motion, *see* Doc. 36.

Proposed Intervenors further asserted that the State Defendants could not adequately represent Proposed Intervenors' interests in this litigation. Memo in Support at 10-11. Although Proposed Intervenors recognized that under Seventh Circuit case law, adequacy of representation by a State defendant is generally presumed, Proposed Intervenors nonetheless asserted that "the nature of the statute at issue indicates that a governmental official could not adequately represent

the interests of the Proposed Intervenors." *Id.* at 10 & n.2.  In particular, Proposed Intervenors explained that the State Defendants might be placed in a difficult position if defense of the statute required them to question the fundraising practices of state judicial candidates in front of whom State Defendants regularly appeared.  *See* Reply in Support of Intervention, Doc. 37, p. 6-7.  At the time, however, discovery had not progressed, and neither party had filed any substantive motion in the case, so it was impossible to determine as a factual matter how or whether the State Defendants would act in support of Proposed Intervenors' interests.

Proposed Intervenors also sought permissive intervention under Rule 24(b).  Memo in Support at 11-14.  As Proposed Intervenors explained, their "unique and varied perspectives will be valuable to the Court in determining the important and weighty democratic issues raised by this case." *Id.* at 14.  In particular, because of their extensive experience with Wisconsin's election systems and in pursuing enactment of the Impartial Justice Act, Proposed Intervenors were in a unique position to offer evidence regarding the benefits of the challenged public financing program.  Memo in Support at 2-5.

This Court, in an order written by Judge Crabb, denied the motion to intervene on March 11, 2010.  Doc. 40.  In denying Proposed Intervenors' motion to intervene as of right, the Court cited two grounds for its ruling:  that the State Defendants would adequately represent Proposed Intervenors' interests in the litigation, and that Proposed Intervenors' did not have the requisite interest to satisfy Rule 24(a)'s requirements.  As to adequacy of representation, the Court made clear that its ruling was based on the limited information available to it at the time:

> Although the proposed intervenors suggest that the attorney general may not wish to criticize sitting supreme court justices in front of whom he appears regularly and may therefore take a soft approach to defending the statute, this theory is insufficient to overcome the presumption. At this early juncture and with nothing

> to go on but speculation from the proposed intervenors, I have no
> basis for finding the government's representation inadequate.

Intervention Order at 8.  In other words, because the Court had "nothing to go on" to support a

finding that the State Defendants' representation was *inadequate*, it found that Proposed

Intervenors could not yet satisfy their burden in that regard.

The Court also tied its finding that Proposed Intervenors did not have the requisite interest

in the litigation to the adequacy of the State Defendants' representation.  The Court began by

citing Seventh Circuit case law for the proposition that "where a statute is challenged, 'the

governmental bodies charged with compliance can be the only defendants.'"  Intervention Order

at 7 (quoting *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985)).  The Court then went on to

discuss the Seventh Circuit's more recent opinion in *Flying J, Inc. v. Van Hollen*, 578 F.3d 569

(7th Cir. 2009), in which that court reversed denial of intervention as of right by a trade

association that sought to support the validity of a statute that had been challenged.  Intervention

Order at 7.  In *Flying J*, the Seventh Circuit held that intervention must be permitted to an

association whose members — proponents and beneficiaries of the challenged statute —would be

"directly rather than remotely harmed by the invalidation of the statute."  578 F.3d at 572.  In

distinguishing *Flying J*, this Court held not that there was any difference in the nature of Proposed

Intervenors' interest and that of the association in *Flying J*, but rather that the difference lay in the

adequacy of representation in the two cases.  Intervention Order at 7.  This Court noted that in

*Flying J*, "the court allowed an association of Wisconsin gasoline dealers to intervene in a lawsuit

challenging the validity of a law restricting the lowest price at which retail sellers of gasoline

could sell their product, *but only after the attorney general decided not to appeal after losing the*

*case.*"  *Id.* (emphasis added).  No such action had at that time been taken by the State Defendants

in this case.

In its order on the initial motion, the Court likewise pointed to the adequacy of the State Defendants' representation in denying Proposed Intervenors' request for permissive intervention. The Court expressly "recognize[d] the experience that proposed intervenors have to offer and ha[d] no doubt that it [would] be valuable in resolving this case."   Intervention Order at 9. However, the Court concluded that the Proposed Intervenors "can adequately present their position as *amici*."   *Id.*   The Court did not directly address the inability of Proposed Intervenors to establish or present a factual record in support of the challenged statutory provisions if they were permitted to act solely as *amici*.

Since the Court's March 11 order denying intervention, the parties have proceeded with discovery in this litigation.   In response to Plaintiffs' discovery requests, the State Defendants have made clear that they do not at this time intend to develop or present to the Court any factual record in support of the validity of the Act.   In particular, the State Defendants have indicated in response to the Plaintiffs' request for documents that "[i]t is Defendants' position that the Impartial Justice Act … does not impose any cognizable burden on First Amendment interests and that Defendants are thus entitled to judgment in their favor as a matter of law without having to reach any factual or partly factual questions about the state interests served by the Act. Accordingly, at the present time, Defendants are not relying upon any documentation to resolve the purely legal questions about the validity of the Act."   *See* Ex. C, p. 3.   The State Defendants have also stated in response to Plaintiffs' Interrogatories that because it is their position that they are "entitled to judgment in their favor as a matter of law without having to reach any factual or partly factual questions about the state interests served by the Act[,] … Defendants have not determined any witnesses on whose testimony they will or may rely with regard to such

questions." Ex. C, p. 6; *see also id.* at 7.  Finally, in correspondence with counsel for Proposed

Intervenors on June 18, 2010, the State Defendants confirmed that they do not "currently intend

to identify any witnesses or conduct any depositions in the defense of the Impartial Justice Act

prior to the dispositive motion deadline" set in this case.  *See* Exs. A-B.[1]

## ARGUMENT

Because it is now, for the first time, clear that the State Defendants do not intend to

pursue fact discovery or to establish for this Court a factual record in support of the Impartial

Justice Act's provision for additional disbursements to publicly financed candidates, Proposed

Intervenors renew their motion to intervene.  It is settled law that a change in circumstances can

support the renewal of a motion to intervene.  In particular, it is clear that new evidence that an

existing party cannot or will not adequately represent the interests of movant intervenors is

grounds for granting a renewed motion to intervene.

As Proposed Intervenors demonstrate below, the State Defendants cannot adequately

represent the Proposed Intervenors' interest in seeing the challenged provisions of the Impartial

Justice Act upheld without developing and presenting a factual record regarding both any burden

that the challenged provisions impose on Plaintiffs' First Amendment rights, and the existence and

extent of state interests furthered by the Act that may outweigh any such burden.  Under existing

Supreme Court precedent, a complete defense of the validity of the challenged statutes will

require development of a factual record, including, in particular, factual evidence from the

Plaintiffs regarding the existence and extent of any burden on them, expert testimony regarding

spending patterns in past Supreme Court elections, and expert and fact testimony regarding the

_____

[1] Counsel for the State Defendants indicated that they might choose to conduct witness discovery

need for the challenged measures in order to further important state interests.  Although the State Defendants have made clear that they do not currently intend to pursue such discovery, Proposed Intervenors are prepared to develop and present this factual record to the Court.

Because it is now clear that Proposed Intervenors' interests will not be adequately represented by the existing parties, Proposed Intervenors must be allowed to intervene as a matter of right.  At a minimum, the State Defendants' decision not to establish a factual record makes clear that participation by Proposed Intervenors in developing and presenting the factual record will greatly enhance the Court's ability to adjudicate the contested issues.  And because Proposed Intervenors cannot adequately establish a factual record if they are permitted to proceed only as *amici*, this Court should exercise its discretion to permit intervention.

## I.     A RENEWED MOTION TO INTERVENE IS PROPER AND SHOULD BE GRANTED WHERE CHANGED CIRCUMSTANCES SUPPORT INTERVENTION.

It is settled law that where intervention has been initially denied, the would-be intervenors may renew their motion to intervene based on intervening changes in circumstances.  Both the Seventh Circuit and this Court have held that intervention must be reconsidered at a later stage in the case, if circumstances have changed since intervention was denied.  *See United States v. Bd. of School Comm'rs of Indianapolis*, 466 F.2d 573, 576 (7th Cir. 1972) ("[C]hanges in the scope of the litigation which occurred after the denial of intervention are relevant to a determination of whether permissive intervention should now be granted."); *Menominee Indian Tribe of Wisconsin v. Thompson*, 164 F.R.D. 672, 677 (W.D. Wis. 1996) ("The Court of Appeals for the Seventh Circuit has recognized that questions concerning permissive intervention may change as a case

---

based on any dispositive motion filed by Plaintiffs.

progresses.  It is equally logical to reexamine the question of intervention as of right when lengthy and complex litigation reaches a new phase.") (citing *Bd. of School Comm'rs of Indianapolis*, 466 F.2d at 576); *see also Hodgson v. United Mine Workers of America*, 473 F.2d 118, 125-26 (D.C. Cir. 1972) (holding, as to review of renewed motion to intervene, "[w]here, as here, a court's ruling has discretionary elements based on circumstances which are subject to alteration, the law recognizes the power and responsibility of the court to reconsider its ruling if a material change in circumstances has in fact occurred").

Moreover, courts have repeatedly recognized that evidence that existing parties' representation of proposed intervenors' interests will be inadequate is proper grounds on which to grant a motion to intervene.  In *Hodgson*, the D.C. Circuit pointed to such changed circumstances as the paradigmatic example for granting a renewed motion to intervene:

> The impact of changed circumstances upon an application for intervention may be illustrated by a simple example.  In litigation involving A against B, C applies to intervene on A's side as of right under Rule 24(a)(2).  The court decides that C's interests are adequately represented by A and denies the application.  At some later time, A becomes lax in his prosecution of the case, thereby jeopardizing C's interests.  An application by C at this time would warrant a different determination by the court as to the propriety of C's intervention.

473 F.2d at 126.  This Court, too, has emphasized that a renewed motion to intervene is proper where the proposed intervenor can show inadequacy of representation — and, in particular, where changed circumstances serve to rebut the presumption of adequacy of representation by a state defendant.  *See Menominee Indian Tribe*, 164 F.R.D. at 679 (authorizing filing of renewed motion to intervene if proposed intervenor "determines that it can overcome the presumption of the adequacy of the state's representation of the rights of all its citizens").

Proposed Intervenors meet these standards.  In discovery responses dated June 7, 2010,

the State Defendants indicated that they did not intend to pursue development of a factual record to support the validity of the Impartial Justice Act. *See* Ex. C. The Proposed Intervenors then attempted to communicate with the State Defendants regarding their plans as to the factual record and, as of June 18, 2010, received confirmation from counsel for the State Defendants that the State Defendants intended to identify neither fact nor expert witnesses, nor to develop and offer evidence that would support the validity of the challenged provisions. Ex. A-B. The Proposed Intervenors now timely seek to renew their motion to intervene based on this new information.

As explained in Part II, below, the State Defendants cannot adequately represent Proposed Intervenors' interest in upholding the challenged provisions of the Impartial Justice Act without the benefit of a factual record. Yet adequacy of the State Defendants' representation was essential to this Court's denial of intervention in the first instance. In denying intervention as of right, the Court pointed to the State Defendants' ability and authority to defend the challenged statute in rejecting Proposed Intervenors' arguments both as to inadequate representation by the existing parties and as to the interest that Proposed Intervenors had at stake. *See* Intervention Order at 7-10 (distinguishing the holding of the Seventh Circuit in *Flying J* based on the attorney general's decision in that case not to pursue appeal). In particular, the Court explained that in the Seventh Circuit's recent discussion of intervention as of right, *Flying J*, "the court allowed an association of Wisconsin gasoline dealers to intervene in a lawsuit challenging the validity of a law restricting the lowest price at which retail sellers of gasoline could sell their product, *but only after the attorney general decided not to appeal after losing the case.*" Intervention Order at 7 (emphasis added). Thus, in *Flying J*, the attorney general's failure to appeal resulted not only in inadequate defense of the statute, but also created a divergence of interest between the state and the proposed intervenors. Just as in *Flying J*, the State Defendants' decision not to develop a

factual record here has resulted in a similar divergence between them and Proposed Intervenors.

Likewise, in denying permissive intervention, the Court concluded that Proposed Intervenors could proceed adequately as *amici*. *Id.* at 9. But that conclusion is no longer supportable, given that Proposed Intervenors cannot provide the necessary factual record in the role of *amici*. Thus, in light of the newly demonstrated *inadequacy* of the State Defendants' representation, the grounds on which this Court denied both intervention as of right and permissive intervention no longer exist, and intervention should now be granted.

## II.    DEVELOPMENT OF A FACTUAL RECORD IS NECESSARY TO PROTECT PROPOSED INTERVENORS' INTEREST IN PRESERVING THE CHALLENGED STATUTES.

The State Defendants have indicated that it is their position that the challenged statutory provisions are constitutional as a matter of law because they impose no "cognizable burden on First Amendment interests." Ex. C, p. 3. The Proposed Intervenors agree that the challenged statutes are constitutionally valid, and further agree that they may be upheld as a matter of law because they impose no cognizable burden on Plaintiffs' speech. However, Proposed Intervenors respectfully submit that a thorough defense of Wisconsin's public financing scheme for Supreme Court elections requires factual discovery. Should this Court disagree that the challenged provisions pose no cognizable burden as a matter of law, then the Court will be required to consider, as a matter of fact, both the existence and extent of any burden on Plaintiffs' First Amendment rights, and the extent to which any such burden is justified by the furtherance of relevant state interests. Because the State Defendants have represented that they do not intend to engage in the factual discovery necessary to create or present to this Court the record from which these legal issues can be decided, Proposed Intervenors should be permitted to intervene.

**A.    This Court's Adjudication of the Existence of Any Unconstitutional Burden on Plaintiffs' Speech Rights Requires a Factual Record.**

Should this Court disagree that the challenged statutes pose no legally cognizable burden on Plaintiffs' speech, then this Court will be required to assess the extent of any burden on Plaintiffs' speech rights.  That assessment will necessarily turn on factual questions.

First, a factual record would be necessary to determine the appropriate standard of review.  In order for this Court to determine the appropriate level of scrutiny, it must apply the "flexible standard" used to review First Amendment or Equal Protection challenges to state election laws. *See Anderson v. Celebrezze*, 460 U.S. 780, 786-89 (1983); *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992).  Before deciding on the appropriate level of scrutiny,

> [a] court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Burdick*, 504 U.S. at 434 (internal citations omitted). The Supreme Court's review of campaign finance regulations traditionally reflects this flexible approach. *See McConnell*, 540 U.S. at 138-39 (assessing magnitude of burden and concluding that lesser scrutiny applied to soft money ban); *Buckley*, 424 U.S. at 21-23, 25, 44-45 (identifying magnitude of burden for contribution limits, expenditure limits and disclosure requirements before applying different standards of review to each).

In the seminal campaign finance case of *Buckley v. Valeo*, the Supreme Court measured the nature and magnitude of the alleged burdens caused by various provisions of the Federal Election Campaign Act (FECA) to determine the applicable level of scrutiny. Relying on an

extensive factual record demonstrating the average cost of political advertisements and candidate spending, the Supreme Court found that FECA's expenditure limits created a "substantial rather than merely theoretical restraint[] on the quantity and diversity of political speech" and were therefore subject to exacting scrutiny. 424 U.S. at 19-20 & n.20-21. After examining a factual record cataloguing the size of contributions made to candidates, however, the Court found that FECA's $1,000 contribution limit created only a "marginal restriction" on speech. *Id*. at 21-22 & n.23.  Accordingly, FECA's contribution limits were subject to a lesser level of scrutiny and could be sustained if the provision achieved a "sufficiently important interest" and was "closely drawn to avoid unnecessary abridgment" of First Amendment rights. *Id*. at 25; *see also McConnell*, 540 U.S. at 138 n. 40. Finally, the Court explained that, unlike limitations on contributions or expenditures, FECA's "disclosure requirements impose no ceiling on campaign-related activity" and were thus not subject to anything close to strict scrutiny. Instead, these provisions were valid so long as there was "a relevant correlation or substantial relation between the government interest and the information required to be disclosed." *Id.* at 64 & 68.

Post-*Buckley*, the Supreme Court has used this flexible approach when reviewing novel campaign finance regulations. For example, in *McConnell*, the Court reviewed the constitutionality of a novel campaign finance regulation prohibiting political parties from raising, soliciting or spending contributions in excess of federal contribution limits on federal elections. *McConnell*, 540 U.S. at 138-39. Plaintiffs claimed that this novel regulation should be subject to strict scrutiny because it regulated solicitation and spending as well as contributions. The Court refused to automatically apply strict scrutiny, instead holding that "the relevant inquiry is whether the mechanism adopted to implement the contribution limit...burdens speech in a way" similar to contribution limits. *Id*. After examining the "percentage of contributions to parties and

candidates" that would be affected by the regulation, the Court found that the provision would have only a "modest impact." *Id*. at 141. Thus, the "less rigorous scrutiny applicable to contribution limits" was warranted, not strict scrutiny. *Id*.

Plaintiffs here have challenged the Act's provisions for additional disbursements to publicly funded candidates — provisions that do not fall squarely into *Buckley*'s framework. In order to determine the level of scrutiny applicable to Plaintiffs' claims, this Court will have to determine the nature and extent of the burden that the Impartial Justice Act imposes on Plaintiffs' speech. In order to do so, this Court will need to consider the nature and extent of Plaintiffs' participation in prior elections and the likely effect of the Impartial Justice Act will pose on future elections — factual considerations that must be developed through depositions of Plaintiffs. Likewise, the level of scrutiny turns on the extent to which any burdens are justified by the furtherance of state interests. Factual analysis, including expert analysis, of spending patterns in prior elections will likely be directly relevant to that question. Here, Proposed Intervenors should be permitted to conduct the factual discovery to determine the proper standard of review to be applied in the event this Court determines that the challenged provisions cause a legally cognizable burden on Plaintiffs' First Amendment rights.

As in *Buckley*, and *McConnell*, development of a factual record here through factual discovery would be the only way for the Court to ascertain the extent of any burden on Plaintiffs' speech, if the Court declines to rule that the statute is constitutional as a matter of law. Because the State Defendants have represented that they do not intend to undertake discovery as to any fact or expert witness who can discuss campaign spending practices in Wisconsin Supreme Court elections, or who can address the likelihood that the challenged statutes will burden Plaintiffs' speech, the State Defendants will not be prepared to defend the challenged statutes'

constitutionality if this Court rejects the view that Plaintiffs' speech has not been burdened as a matter of law.  If Proposed Intervenors are not granted leave to intervene, their interests in upholding the challenged statutes will not be adequately represented; moreover, this Court's adjudication of the significant legal question of the extent of any burden on Plaintiffs' rights will be severely hampered.

> **B.     The Existence and Extent of State Interests That Justify Any Burden Imposed by the Challenged Statutes Is Likewise a Question of Fact.**

Under controlling case law, any burden imposed by a campaign finance regulation must be weighed against the underlying governmental interests. Once a plaintiff provides evidence that a law burdens speech, the reviewing court must then determine if that burden is justified by sufficiently important state interests. *See, e.g.*, *Wisconsin Realtors Ass'n v. Ponto*, 233 F. Supp. 2d 1078, 1085 (W.D. Wis. 2002) ("Because this case is before the court on plaintiffs' motion for judgment on the pleadings, defendants have not been given any opportunity to present facts addressing the legislature's interests in amending its campaign finance laws in response to campaign practices that have developed and evolved in the decades since *Buckley* was decided.").

If Plaintiffs are able to establish some cognizable burden, then analyzing the severity of this burden, as well as the extent to which that burden furthers important state interests will necessarily involve this Court in fact-intensive inquiries.  For example, in *Daggett v. Commission on Governmental Ethics and Election Practices*, 205 F.3d 445 (1st Cir. 2000), the First Circuit upheld a matching funds provision as justified in view of the relevant state interests based on the court's factual determination that "in view of the initial moderate allowance, without the matching funds, even though they are limited in amount, candidates would be much less likely to participate because of the obvious likelihood of massive outspending by a non-participating opponent." *Id.*

- 16 -

at 469.  Relying on that finding, the court credited the state's argument that "the matching funds provision allows it to effectively dispense limited resources while allowing participating candidates to respond in races where the most debate is generated."  *Id.*  Similarly, here, factual evidence — including expert testimony regarding candidates' spending practices in Wisconsin Supreme Court elections — would be essential to determine whether any cognizable burden imposed by the provision for additional disbursements to publicly financed candidates is justified by the state's interests in encouraging participation in public financing and protecting the public fisc.

Additionally, a factual record will likely establish that the Impartial Justice Act effectively serves the compelling state interests of preventing corruption and avoiding its appearance in Supreme Court elections. Anti-corruption is well-recognized as a legitimate and compelling state interest in campaign finance regulations generally and in public financing schemes in particular. *See Buckley*, 424 U.S. at 96 ("It cannot be gainsaid that public financing as a means of eliminating the improper influence of large private contributions furthers a significant governmental interest."); *see also Davis v. Federal Election Commission*, 128 S.Ct. 2759, 2772 (2008) (recognizing "[p]reventing corruption or the appearance of corruption" as "legitimate and compelling government interests … for restricting campaign finances").

Indeed, initial factual development shows that the bill's sponsors were certainly motivated by desires to combat corruption. *See* Press Release, Senator Pat Kreitlow, Statement on Today's Impartial Justice Rally (Oct. 27, 2009), http://www.kreitlowforsenate.com/news/impartial-justice.pdf (arguing that public funding is the "one certain way to remove the influence of big money donations from special interest groups in judicial elections and the unethical conduct that it encourages. . ."); Press Release, Representative Gordon Hintz, Impartial Justice Legislation Passes      Assembly      and      Senate      Today      (Nov.      5,      2009),

http://www.wispolitics.com/1006/091105Hintz_release.pdf ("It is crucial that we protect the integrity of the court system and maintain the public perception of an impartial judiciary."). Moreover, as the bill's sponsors suggest, the state interest in avoiding any perception of corruption is magnified because the law applies only to campaigns for Justice of the Wisconsin Supreme Court. *See Caperton v. A. T. Massey Coal Co.*, 129 S. Ct. 2252, 2266-67 (2009) ("Courts, in our system, elaborate principles of law in the course of resolving disputes. The power and the prerogative of a court to perform this function rest, in the end, upon the respect accorded to its judgments. The citizen's respect for judgments depends in turn upon the issuing court's absolute probity. Judicial integrity is, in consequence, a state interest of the highest order.") (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 793 (2002)).

While it may be a matter of public record that legislators sought to reduce corruption and the appearance of corruption in enacting the Impartial Justice Act, factual discovery will be necessary to determine whether the statute adequately furthers that interest, if this Court determines that the Act burdens Plaintiffs' rights to any extent.  Expert testimony regarding spending patterns in Wisconsin Supreme Court elections and the perception of corruption based on litigation victories of campaign supporters would substantially aid the Court in assessing the importance of the challenged provisions to achieve the stated state interests.

Further development of a factual record will likely establish other compelling state interests as well.  The facts will likely show that the Impartial Justice Act is structured as it is in order to incentivize participation. Candidates would be unlikely to participate in the public funding program without the guarantee of funds sufficient to run a competitive campaign, particularly in the case of a high-spending, highly competitive race.  Factual discovery regarding the likelihood of participation without the challenged provision for additional disbursements

would be necessary to assess the extent to which the challenged provisions are necessary to encourage participation.  Indeed, in the single case in which a federal court of appeals has invalidated a provision of a public financing scheme, the court did so based on a factual record indicating that a state interest in participation was not furthered by the statutory scheme's provision for additional disbursements.  In *Day v. Holahan*, 34 F.3d 1356 (8th Cir. 1994), the court explained that the governmental interest of increasing participation in public financing was not supported by that case's factual record, because nearly 100 percent of candidates were participating in the state's public funding program before the challenged provision had been passed. *Id*. at 1361. *Day* thus further demonstrates that a factual record and factual discovery are necessary to determination of the extent to which state interests are furthered by the challenged scheme.

Additionally, development of the factual record will also illustrate that providing additional disbursements only in highly competitive elections supports another compelling state interest — protecting the public fisc. The legislature clearly structured Wisconsin's system to provide enough public funds to be attractive to potential candidates, but not more than is typically necessary to run a competitive campaign.

While it is possible to identify these state interests based on the pleadings, an assessment of their importance and a weighing of their significance can only be done with further development of an evidentiary record. Because the State Defendants have represented that they do not intend to create or present the requisite factual record, Proposed Intervenors should be permitted to do so.

## CONCLUSION

For the foregoing reasons, this Court should grant the renewed motion to intervene.  In

addition, this Court should permit Proposed Intervenors 60 days from the time this motion is ruled upon to engage in factual discovery prior to filing a dispositive motion.

Respectfully submitted,

COMMON CAUSE IN WISCONSIN
WISCONSIN DEMOCRACY CAMPAIGN
LEAGUE OF WOMEN VOTERS OF
WISCONSIN EDUCATION FUND

DATED: June 23, 2010.                    By:  */s/ Edwin J. Hughes*

Edwin J. Hughes
State Bar Number 1005126
STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
Post Office Box 1784
Madison, Wisconsin 53701-1784
608.256.0226
Fax: 608.259.2600
ehughes@staffordlaw.com

David W. Carpenter
Tacy F. Flint
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
312.853.7000
Fax: 312.853.7036
dcarpenter@sidley.com
tflint@sidley.com

Monica Youn
Angela Migally
BRENNAN CENTER FOR JUSTICE AT
  NEW YORK UNIVERSITY SCHOOL OF LAW
161 Avenue of the Americas, 12th Floor
New York, NY 100013
212.998.6730
monica.youn@nyu.edu
migallya@exchange.law.nyu.edu