IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN RIGHT TO LIFE POLITICAL
ACTION COMMITTEE, GEORGE MITCHELL
And WISCONSIN CENTER FOR ECONOMIC
PROSPERITY,

                Plaintiffs,

   v.

MICHAEL BRENNAN, in his official capacity as
a member of the Government Accountability Board,
WILLIAM EICH, in his official capacity as a member
of the Government Accountability Board, GERALD
NICHOL, in his official capacity as a member of the
Government Accountability Board, THOMAS CANE,
in his official capacity as a member of the Government
Accountability Board, THOMAS BARLAND, in his
official capacity as a member of the Government
Accountability Board, GORDON MYSE, in his official
capacity as a member of the Government Accountability
Board, DAWN MARIE SASS, in her official capacity as
Wisconsin State Treasurer, JOHN T. CHISHOLM, in
his official capacity as  Milwaukee County District
Attorney and BRAD SCHIMEL, in his official capacity
As Waukesha County District Attorney

                Defendants.

OPINION AND ORDER

09-cv-764-wmc[1]

---

In this civil action, which began in December 2009, plaintiffs claim that Wisconsin Statutes §§ 11.26(1)(am), 11.26(2)(an) and 11.513, all of which regulate elections and campaigns for a position as a justice on the Wisconsin Supreme Court, violate their First and Fourteenth Amendment rights of free speech and association.  In February 2010, Common Cause in Wisconsin, League of Women Voters of Wisconsin

---

[1]  This case has been reassigned to Judge William M. Conley pursuant to an administrative order dated March 25, 2010.

Education Fund and Wisconsin Democracy Campaign (the "proposed intervenors") filed their first motion to intervene in this lawsuit. (Dkt. #28.) This court, in an opinion authored by Judge Barbara B. Crabb, denied that motion on March 11, 2010. (Dkt. #40.) The court denied the proposed intervenors' request to intervene as a matter of right "because proposed intervenors have failed to show that they have a direct, significant interest in the suit that is not being represented adequately by the state attorney general[.]" (*Id.* at 8.) The court denied the request for permissive intervention because "proposed intervenors can adequately present their position as *amici*." (*Id.* at 9.) In late June 2010, the proposed intervenors filed a second motion to intervene. (Dkt. #51.) Because there have been no material changes between the denial of the proposed intervenors' first motion to intervene and this court's consideration of their second motion, the second motion will also be denied.

The court's original opinion and order denying the proposed intervenors' first motion provides a summary of the relevant background and facts. (*See* Dkt. #40.) Instead of repeating that information, the court will discuss the relevant portions as necessary in the context of its rejection of the proposed intervenors' renewed motiom.

The gist of proposed intervenors' second motion to intervene is that they are entitled to intervene, either as a matter of right or as a matter of permission, because the defendants do not intend to create or present any factual record, but instead intend to defend the challenged statute's constitutionality on its face as a matter of law. More specifically, the proposed intervenors' contend that "the State defendants have definitively indicated that they do not intend to identify any expert or fact witness, to

2

identify or produce any documentary evidence in defense of the challenged provisions, or to conduct any deposition, prior to the dispositive motion deadline already established in this case." (Proposed Intervenors' Br., dkt. #52, at 2-3.) Even assuming this characterization of state defendants' defense of the relevant statutory provisions by state defendants, proposed intervenors have failed to establish that they either are entitled to or should be permitted to intervene in this case under Fed. R. Civ. P. 24.[2]

### A. Intervention of Right

Proposed intervenors do not contend that they have an unconditional right to intervene under any federal statute. *See* Fed. R. Civ. P. 24(a)(1). That leaves them seeking to intervene as of right under Rule 24(a)(2), which requires that they file a timely motion establishing that they have "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest, unless existing parties adequately represent that interest."

Plaintiffs did not challenge the timeliness of the proposed intervenors' first motion to intervene, but do challenge the timeliness of the second motion. In particular, plaintiffs point to the likely delay that permitting intervention would cause -- plaintiffs

---

[2] Plaintiffs argue that proposed intervenors' second motion to intervene should be denied on procedural grounds, because the proposed intervenors failed to include a pleading that sets out the defense for which intervention is sought, as required by Rule 24(c). While proposed intervenors' second motion did initially suffer from this deficiency, they corrected the mistake by attaching their amended answer to their reply. Additionally, plaintiffs already should have been aware of the answer proposed intervenors would provide since this is their second motion to intervene and the first motion was accompanied by an answer.

specifically referred to the parties' dispositive motions deadline, which at the time when the second motion was filed was only a little over a week away and now is passed. Plaintiffs' timeliness argument is, however, unpersuasive in light of the fact that the proposed intervenors' first motion was denied, in part, because it was filed at too early a juncture in the case to be based on much more than speculation. Having waited a mere four months for arguments to develop, it would be unfair indeed to now find the motion came too late. Indeed, at least as represented, the proposed intervenors filed their second motion as soon as defendants' litigation strategy was made clear in discovery.

Though timeliness is no longer a bar to the proposed intervenors' motion, a failure to establish any of the elements of Rule 24(a)(2) still is. *See Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007) ("failure to establish any Rule 24(a)(2) elements is grounds to deny the petition."). *See also Am. Nat'l Bank & Trust Co. of Chi. v. City of Chicago*, 865 F.2d 144, 146 (7th Cir. 1989) ("The proposed intervenor has the burden of proving each element, and lack of even one element requires denial of the motion.").

An intervenors' interest "must be a direct, significant [and] legally-protectable interest to satisfy Rule 24(a)(2)." *Am. Nat'l Bank & Trust Co. of Chi*, 865 F.2d at 146 (internal quotation omitted). S*ee also Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985) ("the applicant must have a direct and substantial interest in the subject matter of the litigation"). Establishing such an "interest" requires the intervening party to make more of a showing than that required to establish Article III standing. *Flying J. Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009). As the Court of Appeals for the Seventh Circuit has explained, this "interest" means "that the fact that you might anticipate a

4

benefit from a judgment in favor of one of the parties to a lawsuit -- maybe you're a creditor of one of them -- does not entitle you to intervene in their suit." *Id.* For this reason, "[r]emoteness of injury is a standard ground for denying a person the rights of a party to a lawsuit." *Id.* The intervenor must also "be someone whom the law on which his claim is founded was intended to protect." *Id.* at 572.

In denying the first motion to intervene, this court noted that the proposed intervenors had failed to demonstrate their interests were not being represented adequately by defendants. Before reaching that conclusion, the court explained that the interests the proposed intervenors put forward were "insufficient to create a direct, substantial interest to support intervention as of right." (Dkt. #40 at 6.) Despite this, the proposed intervenors fail to offer any new interests. As explained in this court's previous order, proposed intervenors have put forth nothing more than "generalized, public policy interests," such as lobbying and advocating for the public financing of judicial elections, working for a more open and transparent government and combating corruption and undue influence in public offices. (*Id.*) Even the fact that all three proposed intervenors supported and lobbied for the passage of the Impartial Justice Bill through their members -- portions of which plaintiffs are now challenging as unconstitutional -- provides nothing more than a generalized interest in campaign finance reform.

Proposed intervenors also allege that their members receive a direct benefit from the challenged statute, creating more than a generalized interest. This argument stretches too far. In *Flying J, Inc.*, 578 F.3d at 572, to which proposed intervenors cite,

5

the party seeking leave to intervene, an association of Wisconsin gasoline and convenience store retailers, had a sufficiently direct interest in the outcome of the case to intervene as a matter of right because the challenged Wisconsin Unfair Sales Act set a floor price for gasoline sales and "they would lose much or even all of their business to their larger, more efficient competitors." *Id*. As the Seventh Circuit explained, the Act at issue was "special-interest legislation and the special interest is that of retailers who wish, naturally enough, to limit price competition." *Id.* The fact that the gasoline retailers were the Act's direct beneficiaries was spelled out in the Act itself, which authorized them to sue to enforce the statute against price cutters. *Id.*

Here, proposed intervenors have no such unique, direct interest in the outcome of this suit as in a similar situation as the gasoline retailers did in *Flying J*. The Impartial Justice Bill serves no single special interest, but instead is intended to serves the public good by helping reach Chapter 11's overarching "public purpose of stimulating vigorous campaigns on a fair and equal basis and to provide for a better informed electorate." Wis. Stat. § 11.001(1). Nor do the proposed intervenors point to any portion of the statute permitting anyone but the state to sue alleged violators of the statute. Proposed intervenors are in a position more akin to that held by the Illinois Pro-Life Coalition in *Keith*, 764 F.2d at 1267, or the Illinois State Chamber of Commerce in *Sierra Club, Inc. v. Environmental Protection Agency*, 358 F.3d 516, 518 (7th Cir. 2004), both of which were found to lack a sufficiently direct interest to be entitled to intervene as a matter of right.

In *Keith*, 764 F.2d at 1267, the Illinois Pro-Life Coalition lobbied and championed the challenged statute through the legislature. The Seventh Circuit held that IPC's

6

interest as "chief lobbyist" was not direct and substantial for several reasons. *Id.* at 1269. In particular, the Seventh Circuit noted that

> [IPC's] purpose is essentially communicative and persuasive. IPC seeks to inform people about abortion and about IPC's preference for alternatives to abortion. . . . Such a priceless right to free expression, however, does not suggest that IPC has a right to intervene in every lawsuit involving abortion rights, or to forever defend statutes it helped to enact. Rule 24(a) precludes a conception of lawsuits, even "public law" suits, as necessary forums for such public policy debates.

*Id.* at 1270. Like IPC, proposed intervenors have an essentially communicative and persuasive purpose: to provide education and information regarding special interests, elections and legislation to improve the transparency of election and campaign financing. Proposed intervenors' fundamental rights to speak out on such issues and to lobby for legislation favoring their positions or free, transparent elections generally, does not give them a right to intervene in all lawsuits involving campaign finance reform, including this one.

Similarly, in *Sierra Club, Inc.*, 358 F.3d at 517, the Illinois State Chamber of Commerce moved to intervene in the Sierra Club's petition for review filed against the United States Environmental Protection Agency with respect to a permit issued to Indeck-Elwood LLC to construct a coal-fired power plant. The Seventh Circuit held that the Chamber had no direct interest in the outcome of the litigation because "its concern is not a *legal* 'interest' (the permit at stake affects only one power plant) but a political or programmatic one: the Chamber favors more business and less environmental regulation. That does not justify intervention." *Id.* at 518 (emphasis in original). So, too, the proposed intervenors here have a political and not a legal interest in seeing campaign

7

finance more regulated by having the challenged sections of the Impartial Justice Bill upheld. However important that interest, it is not one giving them a right to intervene in this lawsuit.

In addition to failing to establish a direct and substantial interest in the subject matter at issue in this case, proposed intervenors also still fail to establish that defendants will not adequately represent their generalized, political interests. "[W]hen the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors, the representative is presumed to adequately represent their interests unless there is a showing of gross negligence or bad faith." *Ligas ex rel. Foster*, 478 F.3d at 774. While proposed intervenors contend defendants have failed to develop a factual record regarding the constitutionality of the challenged sections of statute, particularly as applied to plaintiffs, this does not approach gross negligence or bad faith.

Indeed, defendants' litigation strategy to defend the statute sections as facially valid, leaving plaintiffs to try to satisfy their burden of proving invalidity as applied, does not demonstrate gross negligence or bad faith. *Cf. Flying J. Inc.*, 578 F.3d at 572 (Attorney General abandoned the case by failing to appeal district court's decision to strike down statute); *see also Ragsdale v. Turnock*, 941 F.2d 501, 508-09 (7th Cir. 1991) (J. Posner, concurring) (Attorney General's agreement to consent decree regarding enforcement of abortion statute was an abandonment of fetal interests and would rebut the presumption of adequate representation).

B.     **Permissive Intervention**

Rule 24(b)(1)(B) allows for permissive intervention where a party, upon timely motion, "has a claim or defense that shares with the main action a common question of law."  Whether to grant intervention on this basis is a decision left wholly to the discretion of the district court.  *Keith*, 764 F.2d at 1272.  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Proposed intervenors' desire to further create a detailed factual record regarding any actual harm the challenged statutory provisions may cause plaintiffs would create undue delay and prejudice to plaintiffs, particularly given that their's is only a facial challenge.  Even recognizing that proposed intervenors have a generalized interest in seeing the challenged statute's validity upheld, this interest is even more removed and attenuated with respect to the rights of the specific plaintiffs in this case.

Requiring plaintiffs to expend more time and effort to address the proposed intervenors' preferred defense strategy, which would require more discovery, would prejudice plaintiffs, while providing little additional value to the court's determination of plaintiffs' more narrowed claim.

While proposed intervenors may not be able to create the factual record they want by acting as *amici* rather than as intervenors, such a record is unnecessary to support their more general interest in establishing the constitutionality of the statute on its face.  Accordingly, proposed intervenors can adequately support their more general interest by defending the challenged statute as *amici,* should they so choose.

ORDER

IT IS ORDERED that the second motion of Common Cause in Wisconsin, League of Women Voters of Wisconsin Education Fund and Wisconsin Democracy Campaign to intervene (dkt. #51) is DENIED.

Entered this 31st day of March, 2011.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge